# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

JOSEPH SHINE-JOHNSON,

             Petitioner,                 :     Case No. 2:20-cv-1873

    - vs -                                       Chief Judge Algenon L. Marbley
                                                 Magistrate Judge Michael R. Merz

WARDEN,
  Belmont Correctional Institution,
                                          :
             Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Joseph-Shine Johnson, is before the Court for decision on the merits.  The relevant filings are the Petition (ECF No. 3), the Amended State Court Record (ECF No. 45), the Amended Return of Writ (ECF No. 46), and Petitioner's Traverse (ECF No. 81).

The Magistrate Judge reference in this case was transferred to the undersigned to help balance the Magistrate Judge workload in the Southern District (ECF No. 25).  Ultimate decision of the case remains with Chief Judge Marbley.

**Litigation History**

On September 18, 2015, a Franklin County Grand Jury indicted appellant on one count of aggravated murder in violation of Ohio Revised Code § 2903.01, one count of murder in violation

1

of Ohio Revised Code § 2903.02, and one count of tampering with evidence in violation of Ohio Revised Code § 2921.12(A), arising from the fatal shooting of Petitioner's father, Joseph Bythewood. Each count included an associated firearm specification under Ohio Revised Code § 2941.145(A). Petitioner pleaded not guilty, and the case proceeded to a jury trial where Petitioner argued he shot his father in self-defense. *State v. Shine-Johnson*, 2018-Ohio-3347 (Ohio App. 10th Dist. Aug. 21, 2018)("*Shine-Johnson I*"), appellate jurisdiction declined, 155 Ohio St. 3d 1439 (2019). The jury found Petitioner not guilty of aggravated murder, but guilty of murder with a firearm specification and guilty of tampering with evidence, also with a firearm specification. The trial court sentenced Shine-Johnson to fifteen years to life on the murder count plus the three mandatory years for the firearm specification and a concurrent two years on evidence tampering with an additional year on the firearm specification on that count.

Shine-Johnson appealed and the Ohio Tenth District Court of Appeals affirmed. *Shine-Johnson I.* With the assistance of appointed counsel, Petitioner appealed to the Supreme Court of Ohio, but that court declined to accept jurisdiction as noted above.

On November 27, 2018, Petitioner filed a *pro se* Application to Reopen the appeal to raise claims of ineffective assistance of appellate counsel (Am. State Court Record, ECF No. 45-1, Ex. 79). The Tenth District denied the Application because it was untimely. *Id.* at Ex. 82. The Supreme Court of Ohio declined to exercise appellate jurisdiction. *Id.* at Ex. 90.

On April 29, 2019, Shine-Johnson filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 raising a claim about retroactive application of amendments to Ohio Revised Code § 2901.05 (Am. State Court Record, ECF No. 45-1, Ex. 94). The trial judge rejected the petition on the merits, holding that the changes made to Ohio Revised Code § 2901.05 by House Bill 228 applied only prospectively (Entry, Am. State Court Record, ECF No. 45-1, Ex.

99). Petitioner appealed and the Tenth District held the trial court lacked jurisdiction because the post-conviction petition was untimely filed and remanded for dismissal on that basis. *State v. Shine-Johnson,* 2020-Ohio-4711 (Ohio App. 10th Dist. Sep. 30, 2020)("*Shine-Johnson II*"), appellate jurisdiction declined, 160 Ohio St. 3d 1498 (2020).

Shine-Johnson filed his Petition in this case by depositing it in the prison mail system on March 4, 2020 (ECF No. 3). He pleads the following Grounds for Relief:

> **Ground One:** The Petitioner was denied a fair trial, and due process under U.S. Constitution Amendment V, VI and XIV, and Ohio const. Article I, §1, §10, and 16 due to Prosecutorial Misconduct.
>
> **Ground Two:** The Trial court committed prejudicial error and denied the petitioner his right to a fair trial, and due process under U.S. Constitution Amendment V, VI, and XIV, and Ohio const. Art I, §1 §10 and 16 when it failed to give curative instructions.
>
> **Ground Three:** The Trial court committed prejudicial error and denied the petitioner his right to a fair trial, and due process under U.S. Constitution Amendment V, VI, XIV, and Ohio const. Art I, §1 §10 and 16 when it failed to provide jurors with requested jury instructions that deprived the petitioner [of] a complete defense.
>
> **Ground Four:** Trial counsel rendered ineffective assistance in violation of the petitioner's rights under U.S. Constitution. Amendment V, VI, and XVI, and Ohio const. Art I, §10 and 16.
>
> **Ground Five:** The Trial court committed prejudicial error and denied the petitioner his right to a fair trial, and due process under U.S. Constitution Amendment V, VI, and XVI, and Ohio const. Art I, §1 §10 and 16 due to the cumulative effect of evidentiary errors at trial.
>
> **Ground Six**: Appellate counsel rendered ineffective assistance in violation of the petitioner's rights under U.S. Constitution Amendment V, VI, and XVI, and Ohio Const. Art I, §10 and 16 When counsel failed to raise ineffective assistance of counsel claim for trial counsel failing to file a motion to dismiss for altering and destroying exculpatory evidence significant to the petitioner's defense denying the petitioner a chance to raise a complete defense.

3

**GROUND SEVEN:** The Petitioner's Conviction is Void in violation the U.S. Constitution. Amendment V, VI, XIV and Ohio Constitution Art. I, section 10, and 16. Due to a Substantive change in the Burden of proof statute. The petitioner's conviction is under a Statutorily unconstitutional law and the new interpretation of the Burden of proof must be applied retroactively.

(Petition, ECF No. 3).

# Analysis

## Claims Under the Ohio Constitution

Each of Petitioner's Grounds for Relief includes a claim of violation of the Ohio Constitution. However, federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).  "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

In his Traverse, Shine-Johnson includes a section arguing that violations of the Ohio Constitution constitute violations of the Due Process Clause of the Fourteenth Amendment (ECF No. 81, PageID 6105-10).  That, however, is not the law.  Failure to abide by state law is not itself a federal constitutional violation. *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). Violation by a State of its own procedural rules does not *per se* constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976).  "A state cannot be said to have a federal due process obligation to follow all of its

procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993).

In the same section, Shine-Johnson argues the United States Supreme Court has somehow constitutionally mandated the availability of self-defense as a defense in a murder case (Traverse, ECF No. 81, PageID 6105-06, relying on *District of Columbia v. Heller,* 554 U.S. 570 (2008)). *Heller* held that the right to keep and bear arms protected by the Second Amendment was an individual right, supportive of the natural right everyone has to defend himself or herself against violence. But the opinion says nothing about the defense of self-defense in a murder case. Similarly, in *McDonald v. Chicago*, 561 U.S. 742 (2010), two years after *Heller* the Court held the Second Amendment was "incorporated" into the Fourteenth Amendment and therefore applicable to the States. Neither of these cases purported to elevate the defense of self-defense in a murder case to a constitutionally mandated defense which is State must recognize, much less to define what that defense must be.

Accordingly, no further analysis is offered on Shine-Johnson's Ohio constitutional claims. Each such claim must be dismissed for failure to state a claim upon which federal habeas corpus relief can be granted.

**Factual Analysis**

Petitioner's Traverse is 241 pages long (ECF No. 81). After a summary of his argument, he disagrees at length with the findings of fact of the Tenth District. *Id.* at PageID 6076-89. This section of the Traverse contains literally hundreds of record citations, none of which complies with this Court's record citation rule, the substance of which was repeated in Magistrate Judge Deavers'

order for an answer: "All papers filed in the case thereafter [after the filing of the record] by each party shall include record references to the PAGEID number." (ECF No. 2, PageID 47). Basically, Petitioner argues the asserted inconsistencies in the trial testimony. But the credibility of witnesses is committed to the trier of fact and the jury here returned two guilty verdicts. Contrary to Petitioner's assertion, the fact that the jury acquitted him of aggravated murder does not mean they generally believed him.

**Ground One: Prosecutorial Misconduct**

In his First Ground for Relief, Petitioner asserts his trial was rendered unfair by prosecutorial misconduct.

Respondent asserts Shine-Johnson procedurally defaulted this Ground for Relief by presenting no prosecutorial misconduct claims to the Supreme Court of Ohio on direct appeal. Alternatively, Respondent asserts the Tenth District's decision on this claim is entitled to deference under 28 U.S.C. § 2254(d)(1)(Am. Return of Writ, ECF No. 46, PageID 5765).

Shine-Johnson raised prosecutorial misconduct as his first assignment of error on direct appeal and the Tenth District decided that assignment as follows:

> [*P72] In his first assignment of error, appellant contends that prosecutorial misconduct denied him of his right to a fair trial. For the following reasons, we disagree.
>
> [*P73] As stated in *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 162, 23 N.E.3d 1096:
>> To evaluate allegations of prosecutorial misconduct, we "must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected [the defendant's] substantial rights." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 121. Because prosecutorial misconduct implicates due-process

6

concerns, "[t]he touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Jones,* 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 200, quoting *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). We "will not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even" absent the misconduct. *LaMar* at ¶ 121.

## 1. Misstatements of the Law

[*P74] "The prosecuting attorney does not instruct the jury on the law, the trial judge does." *State v. Palmer,* 7th Dist. No. 89-B-28, 1996 Ohio App. LEXIS 3683 (Aug. 29, 1996). However, a prosecuting attorney should not mislead the jury by either misstating the law or the facts. *State v. Crossty,* 12th Dist. No. CA2008-03-070, 2009-Ohio-2800, ¶ 45, citing *State v. Depew,* 38 Ohio St.3d 275, 228, 528 N.E.2d 542 (1988).

[*P75] Appellant first contends the prosecutor misstated the law of self-defense by improperly adding a "duty to avoid trouble" to appellant's burden of showing he was not at fault in creating the affray and implying appellant violated this duty by going home to a potential family argument. (Appellant's Brief at 2.) Appellant cites to the following portion of his cross-examination by appellee as the misstatement of law:

Q. A duty to avoid trouble. You know you're walking in to an [sic] fight, don't you?
[Objection, overruled]
* * *
Q. That's your testimony? You could go up there?
A. Yes.
Q. You could go up there and say, mom, dad is high again. I don't know what's going on. I'm crashing here tonight. That would have been absolutely fine, wouldn't it?
A. But at that point in time I'm not sure as of what is going on. So I would not have no idea what is going on until I actually get into the house.
Q. A duty to avoid.
[Objection, sustained as to the prosecutor's comment]
* * *
Q. You know there's a problem and you don't try to avoid that problem?

7

A. I did try to avoid the problem.
Q. By going to that problem. That's how you try to avoid the problem, by walking into that situation?

(Tr. Vol. 5 at 982, 984.)

[*P76] In *State v. Ellis*, 10th Dist. No. 11AP-939, 2012-Ohio-3586, ¶ 12, this court stated:

> It is very well-established that, in order to successfully utilize the affirmative defense of self-defense in a case where a defendant used deadly force, such as the case here, the defendant must prove all three of the following: (1) he was not at fault in creating the situation giving rise to the affray; (2) he had a bona fide belief he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was the use of deadly force; and (3) he did not violate any duty to retreat or avoid the danger. *State v. Jackson*, 22 Ohio St.3d 281, 283, 22 Ohio B. 452, 490 N.E.2d 893 (1986); *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus.

(Emphasis added.)

[*P77] Our review of the transcript shows the prosecutor was attempting to establish appellant chose to return home almost immediately after receiving a text from his father stating "bring your ass here" that admittedly caused him to worry, despite his prior testimony that his father was using drugs, became violent when angry, and was known to pull out guns, and despite the fact that appellant was welcome to stay in his mother's nearby home. (Tr. Vol. 5 at 982.) Appellant does not argue that a "duty to avoid" is an improper consideration altogether but, instead, essentially believes the prosecutor inappropriately suggested that because appellant returned home to a possible confrontation he was at fault in creating the situation giving rise to the affray—a separate self-defense requirement.

[*P78] Contrary to appellant's argument, the prosecutor did not expressly connect the duty to avoid trouble with the not-at-fault element and was instead pursuing a line of questioning directly regarding the duty to avoid the danger. Furthermore, appellant cites no authority to support his claim it is erroneous or prejudicial error for the prosecutor to impliedly connect the duty to avoid trouble with the not-at-fault element. To the contrary, this court has noted

the multitude of cases in which facts showing a defendant who chooses to confront the victim with otherwise lawful actions support both the finding that the defendant was at fault in creating the situation giving rise to the affray and/or a finding that the defendant violated a duty to avoid danger or retreat. *Ellis* at ¶ 16 (finding, based on a multitude of similar cases, "the jury could properly find appellant at fault and/or he did not comply with his duty to avoid danger because he chose to enter a place where he knew the victim and [his ex-girlfriend] would be despite knowing that a confrontation might ensue, he chose to stay in the store even after a confrontation ensued with [his ex-girlfriend], and he chose to follow the victim and [his ex-girlfriend] out of the store and engage in a further confrontation outside instead of staying inside the store or walking away from the volatile situation"). Therefore, we do not find the prosecutor's conduct to be improper.

[*P79] Finally, we note, although appellant does not allege the prosecutor misstated the law of duty to retreat from one's home, he argues that the prosecutorial error alleged here was "compounded by the fact that [appellant] did not have a duty to retreat from his own home." (Appellant's Brief at 17-18.) Pursuant to R.C. 2901.09(B), "a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence." See also *Hubbard,* 2013-Ohio-2735, at ¶ 51 (stating that, contrary to the general rule that a person may not kill in self-defense if he has available a reasonable means of retreat from the confrontation, "[w]hen a person is attacked in their home, * * * they have no duty to retreat before using force in self-defense" pursuant to R.C. 2901.09(B)). The prosecutor's cited statement here did not concern appellant's duty or lack thereof to retreat from danger once inside his own home, and appellant does not cite to case law extending R.C. 2901.09(B) to a defendant's choice to return home to potential trouble. Therefore, we find appellant has not demonstrated error in this regard.

[*P80] Considering all the above, we do not find the prosecutor's statements regarding the "duty to avoid" to be improper.

[*P81] Appellant next contends the prosecutor misstated the law by stating during her closing argument that because appellant had raised self-defense he was "admitting murder" and so appellee's burden of proof on the murder count was "done." (Appellant's Brief at 18.) According to appellant, this statement implied that the burden of proof on the murder count was automatically met, and a juror may

9

have signed a guilty verdict because of the prosecutor's misstatement of the law.

[*P82]  Prosecutors are afforded considerable latitude in closing arguments. *State v. Dillon*, 10th Dist. No. 04AP-1211, 2005-Ohio-4124, ¶ 50, citing *State v. Ballew*, 76 Ohio St.3d 244, 255, 1996-Ohio 81, 667 N.E.2d 369 (1996). A prosecutor's isolated comments are not to be taken out of context and given their most damaging meaning. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 94, 781 N.E.2d 88, citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974). Rather, an appellate court must review a closing argument in its entirety to determine whether prejudicial error occurred. Id., citing *State v. Frazier*, 73 Ohio St.3d 323, 342, 1995- Ohio 235, 652 N.E.2d 1000 (1995). Moreover, "[i]n closing argument, a prosecutor may comment on "'what the evidence has shown and what reasonable inferences may be drawn therefrom.'"" *Dillon* at ¶ 50, quoting *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), quoting *State v. Stephens,* 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970).

[*P83]  "R.C. 2901.05 requires the prosecution to prove beyond a reasonable doubt every element of a homicide offense as defined by statute, and does not require the defendant to disprove an essential element of this offense." *Martin*, 21 Ohio St.3d 91, 21 Ohio B. 386, 488 N.E.2d 166, at syllabus. Thus, in this case, appellee had the burden to prove beyond a reasonable doubt that appellant violated R.C. 2903.02, which states in pertinent part, "[n]o person shall purposely cause the death of another[.] * * * Whoever violates this section is guilty of murder." R.C. 2903.02(A) and (D).

[*P84]  A defendant must prove, by a preponderance of the evidence, the affirmative defense of self-defense. *Id.* at syllabus; R.C. 2901.05(A). Self-defense "admits the facts claimed by the prosecution and then relies on independent facts or circumstances which the defendant claims exempt him from liability." *Id.* at 94 ("Self-defense seeks to relieve the defendant from culpability rather than to negate an element of the offense charged."). *State v. Johnson,* 10th Dist. No. 06AP-878, 2007-Ohio-2792, ¶ 30 (finding that self-defense is not considered in a sufficiency argument, since, as an affirmative defense, it involves an excuse or justification for doing an otherwise illegal act).

[*P85]  Here, in the portion of closing argument referenced by appellant, appellee stated:

Reasonable doubt. Yeah, I've got to prove that he purposefully, with prior calculation and design, caused the death of Joe Bythewood, Jr., that it happened here in Franklin County and he's the one that did it. And I have to prove it to you beyond a reasonable doubt.

But, ladies and gentlemen, by alleging self-defense he's saying, yeah, I did purposely cause the death of Joe Bythewood, Jr., which in the State of Ohio we call murder.

Now, he would even want -- he admitted that, yeah, I did that when [defense counsel] asked him. But when I asked him the same question though, no, no, no, no. He's not saying it's an accident, though. He's not saying somehow it's a reckless act. It was a purposeful act. I had to do it because.

So I would argue that on his defense, asserting self-defense -- it doesn't relieve me of it, but logically by saying, I did it, but murder is -- murder is presumed before you -- you don't get to self-defense unless you're admitting murder. And in this case I would argue to you they are admitting murder.

See, I've got to prove each and every element beyond a reasonable doubt, but in Count 2, that's done.

(Tr. Vol. 5 at 1185-86.) Following this statement, the prosecutor went on to point out that "[t]hen you've got to look at all of the evidence bearing on self-defense" and to argue that appellant was not justified in killing his father in the circumstances based on the testimony presented. (Tr. Vol. 5 at 1188.)

[*P86] At the end of the closing statement, appellant objected, arguing that it was incorrect to tell the jury that in asserting self-defense appellant was admitting murder, because murder is a purposeful killing without justification and all appellant was admitting to is a purposeful killing. Because the objection was not made contemporaneously, the trial court declined to decide whether the closing remarks were in error or to instruct the jury on the point.

[*P87] At the outset, we note appellant has not cited cases in support of such a statement rising to the level of prosecutorial error. Our review of the prosecutor's statement shows the prosecutor repeatedly emphasized appellee had the burden to prove each element of the charged offenses beyond a reasonable doubt and was

making the point the appellant admitted to purposeful killing, which, pursuant to R.C. 2903.02, is defined as "murder." The prosecutor then went on to discuss self-defense and her argument as to why the evidence shows appellant was not justified in killing his father. Looking at the prosecutor's statement in the larger context of the closing argument, we find the prosecutor's statement does not rise to the level of error.

## 2. Assertion of Personal Opinion on Appellant's Guilt During Opening and Closing Arguments

[*P88] A prosecutor generally may not express his personal belief or opinion as to credibility of a witness or as to the guilt of the accused. *Crossty*, 2009-Ohio-2800, at ¶ 45. However, a prosecutor may comment on the testimony and suggest the conclusions to be drawn from it. Id.; *Oteng*, 2015-Ohio-1231, at ¶ 83. In doing so, the prosecutor may express his or her personal opinion if he bases that opinion on the evidence presented in court. *State v. Belmonte,* 10th Dist. No. 10AP-373, 2011-Ohio-1334, ¶ 31; *State v. Keenan,* 66 Ohio St.3d 402, 408, 613 N.E.2d 203 (1993). See, e.g., *Thompson*, 2014-Ohio-4751, at ¶ 193, 141 Ohio St. 3d 254, 23 N.E.3d 1096 (finding "nothing improper" about the prosecutor's argument that the defense theory is "absurd").

[*P89] Appellant asserts the prosecutor first improperly stated her personal opinion in her opening statement when she said "[t]o me it's not a self-defense case, but I'm going to talk about it." (Tr. Vol. 1 at 74.) Appellant objected, and the trial court sustained the objection. Next, appellant asserts the prosecutor improperly stated her personal opinion in her closing statement when she said:

> Officer Mackley said, we didn't secure that weapon. It wasn't a threat. There's no way this guy could even reach it. Yet, somehow just moments earlier he's got this gun in his hand. They want you to believe that, that's fine; I don't buy it.

(Tr. Vol. 5 at 1134.) Appellant again objected, and the trial court sustained the objection.

[*P90] We first note that appellant is attempting to predicate prosecutor error on objections the trial court sustained. As such, we may reject these claims. *Thompson* at ¶ 177; *State v. Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 162, 892 N.E.2d 864; *Viox v.*

*Weinberg,* 169 Ohio App.3d 79, 2006-Ohio-5075, ¶ 36, 861 N.E.2d 909 (1st Dist.).

 [*P91]  Regardless, viewed in context, although the prosecutor's statements reflected her opinion, that opinion was based on the facts of the trial. *Belmonte*. Furthermore, appellant's substantial rights were not prejudicially affected. The trial court instructed the jury:
First of all, it is your exclusive duty to decide all questions of fact that are submitted to you. In connection with this duty, you must determine the effect and value of the evidence and you must not be influenced in your decision by any sympathy, prejudice, or passion toward any party, witness, or attorney.
* * *
I want you to remember, however, that the attorneys are not witnesses. And since it is your duty to decide this case solely on the evidence which you see or hear in this case, you must not consider as evidence any statement of any attorney made during the trial.
(Emphasis added.) (Tr. Vol. 1 at 58-60.)

 [*P92]  In its written instructions, the trial court also instructed the jury they were charged with deciding the disputed facts and to apply the law given to them and that the opening statements and closing arguments of counsel were not to be considered evidence. There is no indication in the record that the jury failed to follow these instructions. Therefore, appellant's argument lacks merit.


### 3. Statement of Personal Knowledge of Facts

 [*P93]   Appellant contends the prosecutor improperly stated personal knowledge of facts in the following exchange during cross-examination of appellant regarding the social media post:

> Q. And you told this jury yesterday, once again, something random you're just saying, correct?
> A. Yes. It's actually a quote from a movie.
> Q. In fact, yeah. I tried to find that quote. You're saying it's from Doc Holliday in Tombstone.
> A. Yes.
> Q. Well, since I couldn't find that quote –

(Emphasis sic.) (Tr. Vol. 5 at 942.) At that point, appellant objected. The court overruled the objection. The prosecutor continued questioning appellant about the meaning of the quote and did not again attempt to state that he could not find it in the movie.

[*P94]  It is improper for a prosecutor in a criminal jury trial to state "what amounts to testimonial assertions under the pretext that he is merely asking a question." (Internal citations omitted.) *State v. Urbina*, 10th Dist. No. 15AP-978, 2016-Ohio-7009, ¶ 45, 72 N.E.3d 105. In this case, it appears that the prosecutor began to improperly assert personal knowledge or outside research into the movie Tombstone into the line of questions about the social media post's meaning.

[*P95]  However, the jury was specifically instructed "[y]ou must not draw any inference or speculate on the truth of any suggestion included in a question that was not answered." (Jury Instructions at 3.) The question was not answered, the prosecutor did not reassert the quote was not in the movie, and in follow-up questions appellant had the chance to clarify the quote did not actually include the word "tombstone" but, instead, appellant wrote "becomes tombstone" as a reference to the movie itself. (Tr. Vol. 5 at 946.) Moreover, whether or not the quote was from or referencing to the movie had little, if any, impact on whether it was nonetheless a veiled threat or not. Considering the above, we do not find appellant was deprived of a fair trial.

### 4. Curative Instructions

[*P96]  Appellant challenges the trial court's failure to provide curative instructions in several of the situations already addressed: after sustaining the objection to the duty to avoid comment (rather than question) made by the prosecutor; after refusing to remedy the prosecutor's comment in his closing argument that appellant admitted murder; and after sustaining objections to the prosecutor's statements of personal opinion.

[*P97]  Appellant requested a curative instruction regarding the prosecutor's comment in his closing argument that appellant admitted murder, which the trial court declined to do because of the untimely objection. We have already found the prosecutor did not misstate the law within the context of the closing argument. Therefore, no curative instruction was necessary.

[*P98]  Appellant did not request curative instructions in the remaining challenges. In general, where a party fails to follow up its objection with a request for a curative instruction, that party waives its right to assert the error on appeal. *State v. Alexander*, 10th Dist. No. 06AP-647, 2007-Ohio-4177, ¶ 36. Therefore, appellant waived

14

review of this issue, and we decline to address it for the first time here.

### 5. Strength of Evidence

[*P99] Appellant argues the evidence supporting appellant's guilt was not strong enough to overcome the prosecutorial misstatements in this case, which potentially lead jurors to completely ignore the self-defense evidence completely. Considering the trial as a whole, we find it clear, beyond a reasonable doubt, that the jury would have found appellant guilty even absent any misconduct. *Thompson*, 2014-Ohio-4751, at ¶ 162, 141 Ohio St. 3d 254, 23 N.E.3d 1096 (internal citation omitted) ("We will not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even absent the [prosecutorial] misconduct."); *State v. Smith*, 14 Ohio St.3d 13, 15, 14 Ohio B. 317, 470 N.E.2d 883 (1984). Thus, appellant's substantial rights were not prejudicially affected in this case. *Thompson*.

[*P100] Accordingly, we overrule appellant's first assignment of error.

Shine-Johnson asserts any perceived procedural default on Grounds One through Five is to be imputed to the State (Traverse, ECF No. 81, PageID 6096, citing *Coleman v. Thompson*, 501 U.S. 722, 754 (1991)). The procedural default doctrine in habeas corpus is described by the Supreme Court in *Coleman* as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

501 U.S. at 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise

in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).

As shown by the lengthy quotation from *Shine-Johnson I,* the Tenth District extensively discussed Shine-Johnson's prosecutorial misconduct claims.  He had two different appointed counsel in that proceeding and again raised the claim in a Motion for Reconsideration which the Tenth District rejected (Am. State Court Record, ECF No. 45, Exs. 63, 68).  The public defender who was his second attorney on direct appeal was forced to withdraw because Shine-Johnson created a conflict of interest by accusing counsel of ineffective assistance. *Id.* at Ex. 65. Nonetheless, the Tenth District appointed new counsel to consider the appropriateness of an appeal to the Supreme Court of Ohio. *Id.* at Ex. 67.  That new attorney did indeed appeal to the Supreme Court of Ohio, but did not include a claim of prosecutorial misconduct (Memorandum in Support of Jurisdiction, (Am. State Court Record, ECF No. 45-1, Ex. 71).

Having been accused of ineffective assistance of appellate counsel, the public defender did what the law required of him:  he sought to be replaced.  The Tenth District did so before it decided the Motion for Reconsideration.  It went further than the law requires[1] by appointing counsel for the remainder of the direct appeal proceedings, but also for further appeal to the Supreme Court of Ohio.

Shine-Johnson now claims he did not want counsel on appeal to the Supreme Court (Traverse, ECF No. 81, PageID 6096).  Indeed he claims:

> The petitioner filed a **pro se** motion and the state record clearly shows he was able to comply with all the procedures of the Ohio Supreme Court to timely file. The petitioner could have continued on his own to the Supreme Court Pro Se and incorporate all the

---

[1] The Sixth Amendment only requires appointment of counsel on a first appeal as of right and not on further discretionary appeal.

16

> claims he wished and would have easily complied with any state
> procedure.

*Id.*  However, he gives no record reference for this supposed *pro se* motion or anything in the state

court record that supposedly shows he was ready to proceed *pro se*.  He did not fire appointed

counsel or seek leave from the Supreme Court of Ohio to proceed *pro se*. He makes unspecific

claims that one or more of his attorneys did not follow his instructions, but he provides no proof

of those instructions.

**After** the Supreme Court of Ohio denied review of the counsel-filed appeal, Shine-Johnson

filed a subsequent motion for delayed appeal to which he attached an Affidavit complaining of

Attorney Cramer's omissions (Am. State Court Record, ECF No. 45-1, Ex. 74).  He states the

Affidavit is unrebutted and therefore must be accepted as true.  That is not so.  Affidavits of their

very nature are hearsay, which need not be accepted, and there was no occasion for the State to

attempt to "rebut."

Because Shine-Johnson was not entitled to appointed counsel on appeal to the Supreme

Court of Ohio, any errors or omissions of that attorney do not amount to unconstitutional

ineffective assistance of counsel.  Shine-Johnson allowed the attorney to act on his behalf in the

Supreme Court without protest.  Thus any errors or omissions are attributable to Shine-Johnson as

the client and not to the State of Ohio.

Petitioner also claims any procedural default should be excused because he is actually

innocent (Traverse, ECF No. 81, PageID 6110, *et seq*.; Section labeled "Manifest Injustice").

> The petitioner has come forward with new evidence a sworn
> affidavit of testifying witness Alexis Quinn that was not presented
> at trial that the State witnesses knew the decedent Joe Bythewood
> had prior calculation to confront the petitioner when he came home
> about money and is sufficient to prove actual innocence. See
> (Traverse, Exhibit D).

17

The Quinn Affidavit is dated February 2, 2021, and in the file at ECF No. 81, PageID 6306-11.  It is properly considered on the actual innocence question because that exception to procedural default requires the presentation of new evidence, not presented at trial.  *Schlup v. Delo,* 513 U.S. 298 (1995); *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005).  However, the Quinn Affidavit is not of the sort required by *Schlup.*  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324.  Ms. Quinn's Affidavit shows that she was in the house when the confrontation occurred between the decedent, her father, and Petitioner, her brother.  However she did not witness the violence as her father told her to go upstairs and she did.  She offers bad character evidence about the decedent, including that he raped her and was drug-addicted, but this does not prove Petitioner was innocent.  She also avers that the prosecutor coached her with respect to her trial testimony, but that also does not prove her brother is innocent.  In sum, the Quinn Affidavit does not prove the actual innocence exception to procedural default.

**Merits of the Prosecutorial Misconduct Claim**

Shine-Johnson continues to insist that the prosecutor's statements about his duty to avoid danger misstate the law because he had no duty to retreat in his own home.  The Tenth District's decision makes a clear distinction between the two duties involved.  As it notes self-defense doctrine in Ohio requires that the person claiming he acted in self-defense must not be at fault for creating the situation, the affray, in which the deadly confrontation takes place.  *Shine-Johnson I*, ¶¶ 76-77.  The prosecutor was arguing that Shine-Johnson knew when he responded to the victim's

18

summons "to get his ass home" that there was going to be an argument and that, given the victim's short temper, it was likely to get violent. He was not in his home[2] when the duty to avoid danger arose and he was under no compulsion to go there at the time he was summoned.

In deciding the First Assignment of Error, the Tenth District applied the correct federal standard from *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974), cited at *Shine-Johnson I,* ¶ 82. The Sixth Circuit has articulated the relevant standard for habeas claims of prosecutorial misconduct. Prosecutorial misconduct justifies federal habeas relief only if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process" and resulted in prejudice. *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

> Once we find that a statement is improper, four factors are considered in determining whether the impropriety is flagrant: (1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial. *See Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). Under [the] AEDPA, this bar is heightened by the deference we give to the . . . [Ohio] Supreme Court's determination of . . . [Petitioner's] prosecutorial-misconduct claims. *See Macias v. Makowski*, 291 F.3d 447, 453-54 (6th Cir. 2002)("If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated Macias's due process rights. But this case is before us on a petition for a writ of habeas corpus. So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law.").

*Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003). See also *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir.), *cert. denied*, 546 U.S. 865, 126 S.Ct. 163, 163 L.Ed.2d 150 (2005); *Goff v. Bagley*,

---

[2] Apparently Shine-Johnson lived in the basement of this house; it was from there that he retrieved the shotgun with which he shot the victim.

601 F.3d 445, 480 (6th Cir. 2010). See also *LaMar v. Houk*, 798 F.3d 405, 430 (6th Cir., 2015).

As the cited authority makes clear, the first step in analyzing a prosecutorial misconduct claim is to determine if the prosecutor's conduct was improper. Here the Tenth District determined that the asserted misstatement of law was not a misstatement of Ohio law. On that point this Court is bound by the Tenth District's determination. *Bradshaw v. Richey*, 546 U.S. 74 (2005). Shine-Johnson relies on assorted case law which tells federal courts what state authorities to look to when the federal court must decide an issue of state law in the first instance, e.g., in a case under diversity of citizenship jurisdiction. That authority does not apply in a case such as this when we are not deciding in the first instance what Ohio law is applicable.

Petitioner argues he did not know he was walking into a fight: "The circumstances in the home that time the petitioner was unaware of because he was had not been at home all day." (Traverse, ECF No. 81, PageID 6130). But the jury heard testimony from the person he was with when he got the summons about what he said in anticipation of what he would find when he went home. There was ample evidence from which the jury could decide that Shine-Johnson was at fault for setting up the confrontation by going to the house on Grasmere.

Shine-Johnson next complains that the prosecutor misstated the burden of proof (Traverse, ECF No. 81, PageID 6150-59). Here again the Tenth District found no misconduct on the part of the prosecutor. *Shine-Johnson I,* ¶¶ 81-87.

Petitioner next complains that the prosecutor repeatedly and improperly asserted personal knowledge of guilt (Traverse, ECF No. 81, PageID 6160-62). The Tenth District rejected this argument entirely as to comments to which objections were sustained and otherwise found the prosecutor's comments were properly based on evidence the jury had heard. *Shine-Johnson I*, ¶¶ 88-92.

Shine-Johnson next argues the prosecutor improperly appealed to the jury's emotions by playing the recording of the 911 call Alexis Quinn made after the victim was shot (Traverse, ECF No. 81, PageID 6168-71). The Tenth District decided this claim as follows:

[*P105] Appellant additionally argues the prosecutor improperly appealed to the emotions of the jury in seeking to have Alexis's 911 call—which contained her stating "[o]h, my God" multiple times, that she was scared, and that there was too much blood, "[t]his is my dad" and "this is my daddy," pleads for medics to hurry, and crying—to be played for the jury. (Tr. Vol. 3 at 406-07.) Appellant contends the call added nothing to appellee's case and was played to appeal to the jury's emotions. Before the 911 recording was played, defense counsel objected on the basis that the recording was "duplicitous and place[d] undue emphasis on Alexis's] testimony" but did not object on the ground that the 911 call was unfairly prejudicial. (Tr. Vol. 3 at 403.) The trial court permitted the recording to be played as a present sense impression. The jury in its deliberations asked for timestamps of the 911 calls.

[*P106] "Prosecutors may not deliberately saturate trials with emotion and a conviction based solely on the inflammation of fears and passions, rather than proof of guilt." *State v. Weston,* 7th Dist. No. 12 MA 122, 2014-Ohio-4252, ¶ 58, citing *Keenan,* 66 Ohio St.3d at 409. However, 911 calls may be relevant and probative, for example, in determining the timing and sequence of events and in testing the consistency of a witness's account. See *State v. Brodbeck,* 10th Dist. No. 08AP-134, 2008-Ohio-6961, ¶ 54 (discussing alleged inconsistencies between 911 call and stipulations and witness testimony); *State v. Sprouse,* 10th Dist. No. 05AP-467, 2006 Ohio App. LEXIS 4174 (Aug. 17, 2006) (discussing allegedly highly prejudicial 911 call demonstrated sequence of events and helped to lend credence to victim's account).

[*P107] We note, in this case, the jury asked for timestamps of the 911 call, implying it found it useful in making its determination in a manner outside of its emotionally charged content. Based on this record, appellant has not shown that the prosecutor improperly sought to incite emotion or sympathy in playing the 911 call from Alexis, and we find its use was reasonably calculated to assist the jury in understanding the sequence of events and in evaluating the evidence.

[*P108] Furthermore, the trial court instructed the jury to consider all the evidence without bias, sympathy, or prejudice. An appellate

court presumes that the jury follows the trial court's instructions. *McKelton,* 2016-Ohio-5735, at ¶ 190, 148 Ohio St. 3d 261, 70 N.E.3d 508. Therefore, we disagree that any error in this regard would have affected the outcome of the trial.

*Shine-Johnson I.*

The typical prosecutor appeal to emotions which is misconduct is the use of rhetorical language by a prosecutor imploring the jury to, for example, put itself in the position of the deceased's family. Here the Tenth District reasonably determined that the 911 call provided relevant evidence about the timeline of events, a conclusion corroborated by the jury's request for the timeline. It is not misconduct to place relevant evidence, however emotional it may be in itself, before a jury.

Shine-Johnson emphasizes that the trial court found enough evidence supported his self-defense claim that it gave a self-defense instruction (Traverse, ECF No. 81, PageID 6177). As in so many other places in the Traverse, Petitioner confuses the question of whether there is sufficient evidence to place an issue before the jury with the question of whether the jury is bound to accept the evidence and return a verdict a certain way. The trial court submitted the self-defense claim to the jury along with all the evidence in the case. Weighing the evidence is the jury's proper function and a habeas court must defer to that weighing, especially when it has been confirmed on appeal. See, for example, *Brown v. Konteh,* 567 F.3d 191 (6th Cir. 2009).

Shine-Johnson summarizes his belief about why the jury did not find him not guilty:

> The Jury likely disregarded all the significant evidence that undermines the state case and the burden to prove beyond a reasonable doubt in support of self-defense because of the prosecutor's many errors and the court's complete failure to remedy them, and the defense counsel failure to continue to object coupled with the erroneous jury instructions imposing a non-existent duty to retreat.

(Traverse, ECF No. 81, PageID 6182). But the jury heard all the evidence in this eleven-day trial

and was instructed on the law in a manner the Tenth District found to be correct under Ohio law. The appellate court also found the prosecutor had not engaged in misconduct and that conclusion is not an unreasonable application of *Donnelly*. Ground One should therefore be dismissed as procedurally defaulted and also without merit.

**Ground Two: Failure to Give Curative Instructions**

In his Second Ground for Relief, Shine-Johnson claims he was denied a fair trial because the trial court failed to give a curative instruction on the prosecutor's claim in closing argument that Shine-Johnson had essentially admitted to murder, defined as Ohio law does as a "purposeful killing."

Shine-Johnson raised this claim as his Third Assignment of Error on direct appeal and the Tenth District decided it as follows:

> [*P111] In his third assignment of error, appellant contends the trial court committed prejudicial error and denied him a fair trial by failing to give curative instructions to the jury when the prosecutor stated that appellant admitted "murder" by raising self-defense and that the burden of proof on the murder count was "done" as a result. (Appellant's Brief at 39.) While defense counsel objected and asked for a limiting instruction, he did so after the closing argument. The trial court did not opine on whether the statement was in error but refused to issue a limiting instruction since an objection was not contemporaneously filed.
>
> [*P112] As addressed in the first assignment of error, we do not find that the prosecutor's comments during the closing argument amounted to error. The prosecutor repeatedly emphasized that appellee had the burden to prove each element of the charged offenses beyond a reasonable doubt and was making the point the appellant admitted to purposeful killing, which, pursuant to R.C. 2903.02, is defined as "murder." The prosecutor then went on to discuss self-defense and her argument as to why the evidence shows

he was not justified in killing his father. As a result, we disagree
with appellant that a curative instruction was necessary in this case.

*Shine-Johnson I.*  In sum, the appellate court found there was no error to cure and any request for a curative instruction was untimely because not contemporaneous.

Shine-Johnson asserts any failure to contemporaneously object is excused by the plain error provisions of Fed. R. Crim. P. 52.  But that is a rule applicable to the trial of criminal cases in federal court in the first instance, not in habeas corpus, as is shown by the fact that all cases cited by Petitioner are from federal criminal trials (Traverse, ECF No. 81, PageID 6189).  The Ohio contemporaneous objection rule, which the Tenth District enforced in this case, has been repeatedly upheld by the Sixth Circuit as an adequate and independent state procedural rule. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012),*citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v.  Bradshaw*, 482 F.3d 442 (6th Cir.  2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005);  *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).  *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied,* 562 U.S. 876 (2010).

The question whether the prosecutor's comment was in error or constituted misconduct is a question of Ohio law.  The Tenth District held that it was not in error, much less misconduct. The defense of self-defense, at least as presented in this case, involves an admission that Shine-Johnson purposely killed his father.  He did not claim the gun in his hand went off accidentally or that he was not guilty by reason of insanity or that he didn't know the gun was loaded.  His defense amounted to saying that he intentionally killed because he had to do so to save his own life.  The

24

prosecutor properly characterized Petitioner's admission of the shooting.  As he himself recognizes, the case was about whether he could persuade the jury he acted in self-defense.

Ground Two should be dismissed because it is procedurally defaulted in two ways:  failure to include it in the appeal to the Supreme Court of Ohio and failure to make a contemporaneous objection.  It is also without merit because the Tenth District's decision on the merits is a matter of Ohio law and not an objectively unreasonable application of any Supreme Court precedent.

**Ground Three:  Failure to Give Requested Instructions**

In his Third Ground for Relief, Shine-Johnson claims he was deprived of a fair trial when the trial court refused to give certain requested jury instructions.

As Petitioner himself acknowledges (Traverse, ECF No. 81, PageID 6194), in order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned; taken as a whole they must be so infirm that they rendered the entire trial fundamentally unfair. *Waddinngton v. Sarausad,* 555 U.S. 179, 192-94 (2009); *Henderson v. Kibbe,* 431 U.S. 145 (1977).  The only question for a habeas court to consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62 (1991), *quoting Cupp v. Naughten*, 414 U.S. 141 (1973).  The category of infractions that violate fundamental fairness is very narrow. *Levingston v. Warden*, 891 F.3d 251 (6th Cir.  2018); *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000), *citing Dowling v. United States*, 493 U.S. 342, 352 (1990).  The category of omitted instructions that would violate fundamental fairness is also very narrow.  For example, omission of a reasonable doubt instruction would require a new trial.  *Sullivan v.*

*Louisiana*, 508 U.S. 275 (1993).

Shine-Johnson argues the right to correct jury instructions is part of the right to submit a complete defense (Traverse, ECF No. 81, PageID 6195-96, relying on *California v. Trombetta,* 467 U.S. 479 (1984), and *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973)).  While that is true, it is the defense as defined by state law, particularly when it is an affirmative defense such as self-defense.  To put it another way, there is no defense of self-defense defined by the United States Constitution which a defendant must be permitted to present.  *Keahey v. Marquis*, 978 F.3d 474, 478 (6th Cir. 2020).

Petitioner jumbles together his reasons why the Tenth District's decision is not entitled to deference:

> The State Courts decision was objectively unreasonable for committing "a clear factual and legal error" **and or** "merely assuming" that a certain factual conclusion is correct rather than systematically scrutinizing the relevant facts; **and or** uncritically "deferring" to an individual's assertion (such as, for example, the prosecution presented evidence outside of the record and misstates the evidence as basis for an omission or apparent error) rather than rigorously appraising the validity of that contention; **and or** erred in its application of the legal standard to the facts by, for example: finding a doctrinal exception to be applicable to the facts when it actually is not; **and or** failing to give appropriate consideration and weight to pertinent facts; **and or** construing or applying some element of the legal standard in an **overly broad or unduly narrow** manner that has the effect of skewing that particular element or undermining other elements of the standard.

(Traverse, ECF No. 81, PageID 6196; emphasis added).  In other words, Petitioner refuses to specify a ground for not deferring, preferring a shotgun approach to argument. With respect to factual findings by the state courts, he uses the same approach:

> The states [sic] court made an unreasonable determination of the facts because, the state court failed to make a factual determination that should have been made; **and or** Although the state court made a factual determination, that determination was procedurally

> unreasonable because The state court made an evidentiary finding without holding a hearing; **and or** Although [sic] the state court held a hearing, that hearing was not "full and fair"; **and or** The state court misconstrued or misstated the record or overlooked or misconstrued evidence; **and or** The state court applied an erroneous legal standard in making the factual determination; **and or** Although the state court made a factual determination and employed an adequate procedure in making that determination the resulting determination is substantively unreasonable because it is not fairlv supported by the "evidence presented in the State court proceeding."

*Id.* at PageID 6197.

Shine-Johnson then proceeds for nearly fifty pages to argue his interpretation of the required self-defense instruction in this case (Traverse, ECF No. 81, PageID 6197-6241). He presented this claim to the Tenth District as a claim that the trial court should have given an instruction that a cohabitant of a residence has no duty to retreat before using deadly force. The appellate court decided this claim as follows:

### 1. Cohabitant Instruction

[*P27]  Appellant first challenges the trial court's rejection of his proposed instruction regarding cohabitants and the "no duty to retreat" rule as it relates to self-defense. (Appellant's Brief at 44.) The jury instruction at issue given by the court states:

> A person has a duty to retreat unless he is in his residence * * *.
> "Residence" means a dwelling in which a person lives.
> A "dwelling" means a building of any kind that has a roof over it and is designed to be occupied by people at night.
> A building includes an attached porch.

(February 24, 2017 Jury Instructions at 11.)

[*P28]  Appellant objected to this instruction and requested an instruction that "there's no duty to retreat from one's own home before resorting to the use of force and self-defense against a cohabitant with an equal right to be in the home." (Tr. Vol. 4 at 896.) Appellant argues this instruction is relevant since appellant was a cohabitant with his father, was necessary to instruct the jury since he was assaulted inside the home prior to trying to escape through

the backyard, was not redundant since the instructions given by the court did not address cohabitants, and was prejudicial since plaintiff-appellee, the State of Ohio, had elicited testimony that appellant was not on the lease, was not paying rent, and was not part of the original family unit, all of which implied he had a lesser right to be at the home. Appellant also suggests that additional instructions—that a defendant has to rule out all other means of escape before using force, could not violate any duty to retreat or avoid the danger, must not seek a fight armed with a dangerous weapon, and must withdraw from a fight he started—confused and contradicted the instruction regarding not retreating from one's own home.

 [*P29]  Appellee argues it is undisputed  that at the time of the shooting, appellant was not in the house and that the only evidence before the jury was that appellant was outside the house when he fired the shot that killed his father. As a result, appellee argues the cohabitant instruction would have been inappropriate.

 [*P30]  Under Ohio law, self-defense is an affirmative defense which a defendant must establish by a preponderance of the evidence. R.C. 2901.05(A); *State v. Martin,* 21 Ohio St.3d 91, 94, 21 Ohio B. 386, 488 N.E.2d 166 (1986). To prove self-defense, a defendant must prove that he: (1) was not at fault in creating the situation that gave rise to the fight; (2) had a bona fide belief that he was in imminent danger of death or great bodily harm and that the use of force was his only means of escape; and (3) he did not violate any duty to retreat or avoid the danger. *State v. Williford,* 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990), citing *State v. Robbins,* 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus.

 [*P31]  Generally, one has a duty to retreat, if possible, before resorting to lethal force. *Williford* at 250. However, there is no duty to retreat from one's own home before using force in self-defense. *Hubbard* at ¶ 51; R.C. 2901.09(B) ("a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense"); *State v. Thomas*, 77 Ohio St.3d 323, 327, 1997- Ohio 269, 673 N.E.2d 1339 (1997) ("a person who, through no fault of her own, is assaulted in her home may stand her ground, meet force with force, and if necessary, kill her assailant, without any duty to retreat"). The Supreme Court of Ohio has further held that "there is no duty to retreat from one's own home before resorting to lethal force in self-defense against a cohabitant with an equal right to be in the home." *Id.* at 328.

[*P32]  This court has found the "no duty to retreat" exception did not apply where "the evidence demonstrates the shooting occurred, at best, in appellant's front yard." *State v. McDowell,* 10th Dist. No. 10AP-509, 2011-Ohio-6815, ¶ 39, discretionary appeal not allowed, 131 Ohio St. 3d 1512, 2012-Ohio-1710, 965 N.E.2d 312. This understanding aligns with the definitions set forth in Ohio's no duty to retreat statutes.  As it is used in R.C. 2901.09(A), "residence" means "a dwelling in which a person resides either temporarily or permanently or is visiting as a guest," and "dwelling" means "a building or conveyance of any kind that has a roof over it and that is designed to be occupied by people lodging in the building or conveyance at night, regardless of whether the building or conveyance is temporary or permanent or is mobile or immobile. [A] building or conveyance includes, but is not limited to, an attached porch, and a building or conveyance with a roof over it includes, but is not limited to, a tent." R.C. 2901.05(D)(2) and (3).

[*P33]  Appellant has not cited cases in which, despite the definitions in R.C. 2901.05(D), the no duty to retreat exception extends to a similar factual situation to the case at hand, where, after an altercation with a cohabitant inside of the home, the defendant fires the fatal shot from the yard. Considering all the above, we find appellant has not demonstrated that the trial court abused its discretion in declining to provide a jury instruction on the no duty to retreat rule extending to cohabitants or that the lack of such an instruction constitutes reversible error in this case.

*Shine-Johnson I.*

As noted previously, this Court is bound by the Tenth District's conclusion on what Ohio law is for purposes of this case.  Moreover, Petitioner has cited to this Court no decision by the Supreme Court of Ohio requiring a "no duty to retreat from a cohabitant" instruction when the shooting indisputably takes place outside the residence.  Petitioner's sub-claim about the failure to give the proposed cohabitant instruction is without merit.

Shine-Johnson's next omitted instruction claim relates to the trial judge's refusal to give a limiting instruction regarding his flight from the scene.  He claims he was entitled to the instruction because he fled the scene in fear for his own safety (Traverse, ECF No. 81, PageID 6241).  The Tenth District decided this claim as follows:

[*P46]  Appellant contends the trial court abused its discretion in including a flight instruction in the jury instructions. The instruction given by the trial court states:

> Testimony has been admitted indicating that the defendant fled the scene. You are instructed that flight alone does not raise a presumption of guilt but it may tend to indicate the defendant's consciousness of guilt. If you find that the facts do not support that the defendant's flight or if you find that some other motive prompted the defendant's conduct or if you are unable to decide what the defendant's motivation was then you should not consider this evidence for any purpose. However, if you find that the facts support that the defendant engaged in such conduct, and if you decide that the defendant was motivated by a consciousness of guilt, you may, but are not required to, consider that evidence in deciding whether the defendant is guilty of a crime charged. You alone will determine what weight, if any, to give to this evidence.

(Jury Instructions at 1202-03.)

[*P47]  Appellant objected to this instruction because the evidence showed he left the scene in fear of his safety and there was otherwise insufficient evidence to support the flight instruction. Appellant also asked the court to instruct the jury that it could consider the fact that appellant voluntarily surrendered. Appellee contends there was sufficient evidence to support a flight instruction.

[*P48]  On this record, we agree with appellee. It is undisputed that appellant did not remain at the scene of the shooting but, instead, left the scene and proceeded on foot to his mother's house. He then left his mother's house and went to a second residence before deciding to turn himself in to the police. An inference could be drawn from this evidence that defendant fled the scene and continued to flee because of a consciousness of guilt. If the jury believed appellant's side of the story, the instructions specifically state the jury is free to decide that another motive, such as fear for his safety, prompted him to leave the scene. Furthermore, nothing in the flight instruction negated the jury's ability to consider the fact that appellant voluntarily surrendered. Therefore, we find the flight instruction was appropriate, and the trial court did not abuse its discretion in this regard.

*Shine-Johnson I.*

The trial court did not instruct the jury that it must or even that it could presume flight evidenced a consciousness of guilt.  The jury was free to believe Shine-Johnson's testimony about why he fled[3], but it was not compelled to believe that testimony.  As the Tenth District held, the instruction actually given was completely proper under Ohio law.

Shine-Johnson next complains about the refusal of the trial court to give a limiting instruction on evidence the State presented relating to his character (Traverse, ECF No. 81, PageID 6242-45).  The Tenth District decided this claim as follows:

> [*P40]  Appellant contends the trial court erred in not providing a limiting instruction pertaining to evidence admitted related to an allegation that appellant caused a younger, autistic stepbrother to seek treatment for a concussion in order to show his propensity for violence and which was unfairly prejudicial in violation of Evid.R. 403(A).

> [*P41]  "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request of a party, shall restrict the evidence to its proper scope and instruct the jury accordingly." Evid.R. 105. The rule on character evidence, Evid.R. 404, provides in pertinent part:

>> (A) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions:
>> (1) Character of accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible * * *.
>> * * *
>> (3) Character of witness. Evidence of the character of a witness on the issue of credibility is admissible as provided in Rules 607 [Impeachment], 608 [Evidence of character and conduct of witness], and 609 [Impeachment by evidence of conviction of crime].
>> (B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as

---

[3] Although why would it?  The only person who had threatened his safety was dead.

31

proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[*P42]  Proof of character may be made by testimony as to reputation, by testimony in the form of opinion, or, on cross-examination, by inquiry into a relevant specific instance of conduct under Evid.R 405(B). Thus, when a defendant introduces evidence of a particular character trait, usually peacefulness in a trial involving a violent offense, the defendant "opens the door" for the prosecution, which is then permitted to rebut or impeach this character evidence on cross-examination. (Internal citation omitted.) *State v. C.W.,* 10th Dist. No. 15AP-1024, 2018-Ohio-1479, ¶ 45; *State v. Warsame,* 10th Dist. No. 06AP-1254, 2007-Ohio-3656, ¶ 24. The cross-examination may include inquiry into relevant specific instances of conduct. Evid.R. 405(A).

[*P43]  Here, appellee called Alexis on direct. Appellant, in cross-examining Alexis, asked whether she knew appellant to be a violent person and whether he was "one to go out and just try to cause harm to other people," which Alexis answered in the negative, and whether appellant tends to try to walk away from confrontation and tends to "bring the peace," which Alexis answered in the positive. (Tr. Vol. 3 at 416.) On redirect, appellee asked Alexis about her answers to these questions, followed by asking whether she knew of violence he committed and beginning to ask her to "[t]ell us about him and [his younger stepbrother], the concussion [the stepbrother] got." (Tr. Vol. 3 at 420.) Appellant objected and the parties conducted a voir dire examination of Alexis out of the presence of the jury. The court then disallowed appellee from questioning Alexis about the specific instance of violence because she did not have personal knowledge of the incident but allowed questioning regarding her awareness of situations in which he had gotten into fights generally. Appellee then resumed questioning of Alexis as follows:

Q. Referring specifically to the questions [defense counsel] asked you about your brother's character trait for peacefulness, do you remember those questions?
A. Yes.
Q. It was your answer on cross-examination that you know your brother to be a peaceful man, correct?
A. Yes.
Q. But, in fact, you also know of more than one incident of where he did not act in a peaceful, peacemaker way, correct?
A. Yes.

> Q. Okay. And, in fact, you have direct knowledge of at least one of those incidents?
> A. Yes.

(Tr. Vol. 3 at 438-39.) Appellant denied being involved with any physical altercations with other members of his family.

[*P44]  Our review of the transcript shows appellant introduced evidence of appellant's character trait of peacefulness, opening the door for appellee to rebut or impeach this evidence. This is an exception to Evid.R. 404's prohibition against admitting evidence of a person's character or a trait of character for the purpose of proving action in conformity therewith on a particular occasion. Evid.R. 404(A)(1).

[*P45]  Moreover, the specific information that appellant deems prejudicial—the inference that appellant gave his young, autistic family member a concussion—was contained within the prosecutor's question. The trial court instructed the jury that "[e]vidence is all the testimony received from the witnesses, the exhibits admitted during the trial, and facts agreed to by counsel call [sic] stipulations" and that "you must not draw any inference or speculate on the truth of any suggestion included in a question that was not answered." (Jury Instructions at 2, 3.) Thus, the information was not "evidence" which would be subject to a limiting instruction, and the jury is presumed to follow the trial court's instructions. *State v. McKelton,* 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 190, 70 N.E.3d 508. We find the trial court did not abuse its discretion in declining to include a jury instruction regarding character evidence in these circumstances.

*Shine-Johnson I.*  Under Ohio law when a defendant introduces evidence of his own character trait for peacefulness, he "opens the door" to rebuttal character evidence. That is precisely what the Tenth District found happened here.  There is no Supreme Court precedent the Tenth District failed to follow in this holding.

In sum, Shine-Johnson's Third Ground for Relief is procedurally defaulted for failure to include it on appeal to the Supreme Court of Ohio and without merit because it is not shown to be an unreasonable application of any precedent of the United States Supreme Court.  It should be dismissed.

33

**Ground Four:  Ineffective Assistance of Trial Counsel**

In his Fourth Ground for Relief, Shine-Johnson claims he received ineffective assistance of trial counsel.  He agrees that the governing standard for such claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984), where the Supreme Court held:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011). Petitioner claims the Tenth District's application of *Strickland* was unreasonable (Traverse, ECF No. 81, PageID 6247).

Petitioner's first cited instance of alleged ineffective assistance of trial counsel is trial counsels' failure to object to the prosecutor's "egregiously improper closing argument." *Id.* at PageID 6251. He expands that claim to other asserted prosecutorial misconduct and then proceeds to re-argue his claims of prosecutorial misconduct. *Id.* at PageID 6253-62.

Shine-Johnson raised his ineffective assistance of trial counsel claim as his Fifth

Assignment of Error on direct appeal and the Tenth District decided it as follows:

> [*P120]  In his fifth assignment of error, appellant contends his defense counsel rendered ineffective assistance. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that trial counsel's performance fell below an objective level of reasonable representation and that the defendant suffered prejudice as a result. *Oteng*, 2015-Ohio-1231, at ¶ 86, citing *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
>
> [*P121]  Appellant argues counsel was ineffective for a number of issues previously raised in this opinion: failing to object to the prosecutor's conflation of elements of the self-defense test during the opening statement, the cross-examination of appellant after being overruled and then sustained, and the closing argument; failing to timely object to the prosecutor's misstatement of law that appellant admitted murder; and objecting to the 911 call on the wrong basis. However, failure to object to error alone ordinarily is not enough to sustain a claim of ineffective assistance of counsel. *State v. Holloway*, 38 Ohio St.3d 239, 527 N.E.2d 831 (1988). See also *State v. Gumm*, 73 Ohio St.3d 413, 428, 1995-Ohio-24, 653 N.E.2d 253 (1995) (stating defense counsel's failure to object to prosecutorial misconduct "does not constitute ineffective assistance of counsel per se, as that failure may be justified as a tactical decision"); *Strickland* at 689, 690, quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955) (stating that counsel is "strongly presumed" to have rendered adequate assistance and "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'"). Furthermore, we have already concluded the arguments posed by appellant here lack merit, and, as a result, an objection on the grounds of prosecutorial misconduct alleged by appellant or the 911 call on the basis asserted by appellant would not likely have been successful. Therefore, trial counsel was not ineffective for failing to raise those objections.
>
> [*P122]  Finally, appellant argues his trial counsel's many errors, when considered together, deprived him of a fair trial. However, as we have previously concluded trial counsel did not err in the manner alleged by appellant, we find no merit in appellant's cumulative error theory. Accordingly, appellant's fifth assignment of error is overruled.

36

*Shine-Johnson I.* In sum, the Tenth District stood by its prior holdings that the prosecutor did not commit misconduct. Therefore failure to object did not prejudice Petitioner because the objections would not have been sustained. It cannot be deficient performance in violation of the first prong of *Strickland* to fail to make an objection that was without merit. Neither *Strickland* nor any of its progeny hold that a trial attorney performs deficiently when he or she fails to make a meritless objection. A defendant is not entitled as a matter of constitutional law to hope that a trial judge would have sustained such an objection.

Ground Four should therefore be dismissed.

**Ground Five: Cumulative Trial Court Error**

In his Fifth Ground for Relief, Shine-Johnson claims that the accumulated errors of the trial court entitled him to relief. After enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), such claims are no longer cognizable in habeas corpus. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011), *cert. denied,* 132 S.Ct. 2751 (2011), *citing Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied sub nom. Moore v. Simpson,* 549 U.S. 1027 (2006).

> Moreland argues that the cumulative effect of counsel's errors should be considered in determining whether he has demonstrated a reasonable probability of a more favorable outcome. However, "post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010) (quoting *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).

*Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012), *cert. denied sub nom. Moreland v. Robinson*, 134 S. Ct. 110 (2013). See also *Ahmed v. Houk*, 2014 U.S. Dist. LEXIS 81971, *332

(S.D. Ohio 2014).

Shine-Johnson's Fifth Ground for Relief should therefore be dismissed for failure to state a claim upon which habeas corpus relief can be granted.

## Ground Six: Ineffective Assistance of Appellate Counsel

In his Sixth Ground for Relief, Shine-Johnson claims he received ineffective assistance of appellate counsel when his appellate attorney failed to raise as an assignment of error his trial counsel's failure to file a motion to dismiss because the State had destroyed exculpatory evidence.

Petitioner alleges "[i]n this case the prosecutor suppressed the fact that the 20 gauge shotgun[4] was purposely taken apart by police before the scientific test were performed on the weapon and the operable weapon's firing pin was removed and missing." (Traverse, ECF No. 81, PageID 6267).

Ohio's procedure for raising claims of ineffective assistance of appellate counsel is by filing an application to reopen the appeal under Ohio R. App. P. 26(B). Shine-Johnson filed such an application of November 27, 2018 (State Court Record, ECF No. 45-1, Ex. 79). The Tenth District denied the application because it was untimely filed on the ninety-second day after the appellate judgment when the rule requires filing within ninety days (*State v. Shine-Johnson*, Case No. 17AP-194 (10th Dist. Jan. 31, 2019); unpublished, copy at State Court Record, ECF No. 45-1, Ex. 82).

Ohio App. R. 26(B) allows a late filing if good cause is shown. Shine-Johnson asserted that he had deposited the application in the prison mailing system on November 15, 2018, and the

---

[4] This is the weapon with which the deceased was allegedly armed, as opposed to the twelve-gauge shotgun with which petitioner was armed.

prison had processed the cash slip for postage November 19, 2018.  However, the application was

not received until November 27, 2018, two days late.  *Id.* The Tenth District held that this was not

good cause, citing a number of Ohio cases in which 26(B) applications received a day or two late

were denied as untimely.  *Id.* Shine-Johnson appealed but the Supreme Court of Ohio declined to

exercise appellate jurisdiction (Entry, State Court Record, ECF No. 45-1, Ex. 90).

There is a relevant Ohio procedural rule requiring 26(B) applications to be filed within

ninety days of the appellate judgment.  That rule was enforced against Shine-Johnson and it is both

regularly enforced by the Ohio courts and an adequate an independent state ground of decision.

*Landrum v. Mitchell,* 625 F.3d 905 (6th Cir. 2010); *Parker v. Bagley,* 543 F.3d 859 (6th Cir.

2008)(noting that *Franklin* was a capital case); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir.

2007)(distinguishing holding in capital cases); *Monzo v. Edwards*,  281 F.3d 568 (6th Cir. 2002);

*Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), *citing Rideau v. Russell*, 2009 WL 2586439 (6th

Cir. 2009).  Thus Shine-Johnson's ineffective assistance of appellate counsel claim would be

procedurally defaulted unless he could show cause and prejudice to excuse the default.  However,

the prison officials' delay in mailing the application constituted good cause to excuse the default.

*Dorn v. Lafler,* 601 F. 3d 439 (6th Cir. 2010).  Therefore this Court can reach the merits of the

Sixth Ground for Relief.  We consider it *de novo* because there is no state court decision on the

merits to which to defer under 28 U.S.C. § 2254(d).

The *Strickland* test applies to appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285

(2000); *Burger v. Kemp,* 483 U.S. 776 (1987).  To evaluate a claim of ineffective assistance of

appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise.

*Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th

Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a

reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, *citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant[5]. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986). "Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017), quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008). However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), *citing Joshua v. Dewitt,* 341 F.3d 430, 441 (6th Cir. 2003); *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F.3d 408, 427-29 (6th Cir. 1999). Counsel can be ineffective by failing to raise a "dead-bang winner," defined as an issue which is obvious from the trial record and which would have resulted in a reversal on appeal, even if counsel raised other strong but unsuccessful claims. *Mapes, supra, citing Banks v. Reynolds*, 54 F. 3d 1508, 1515 n. 13 (10th Cir. 1995); see also *Page v. United States*, 884 F. 2d 300, 302 (7th Cir. 1989). Stated differently, failure to raise a significant and obvious claim can amount to reversible error. *Mapes v. Tate*, 388 F.3d 187, 192 (6th Cir. 2004).

Shine-Johnson bases his claim that his trial attorney provided ineffective assistance of trial

---

[5] At several points in his Traverse Shine-Johnson asserts the duty of an attorney as agent to follow the directions of the client, his principal. But the test for ineffective assistance of appellate counsel is not limited by agency law. The question is not whether the attorney followed orders, but whether in doing so he omitted a winning assignment of error.

counsel on *California v. Trombetta,* 467 U.S. 479 (1984). In that case the Supreme Court held that whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, see *United States v. Agurs*, 427 U.S., at 109-110, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

The twenty gauge shotgun with which the decedent is claimed to have threatened Petitioner did not have a firing pin at the time of trial[6] and had been disassembled after it was taken into police custody. Petitioner's theory seems to be that the police deliberately removed the firing pin and destroyed it so as to undermine Petitioner's claim that he feared for his life with the shotgun in his father's hands.

Even in his Application to Reopen, Shine-Johnson claimed only that the Columbus Police failure to preserve the shotgun in the exact same condition as it was received was negligent (Application, State Court Record, ECF No. 45-1, PageID 4122). He did not claim, and could not plausibly claim, that its exculpatory value was evident. He summarizes the testimony of several police witnesses who came in contact with the shotgun. *Id.* at PageID 4124-25. He then summarizes his ineffective assistance of appellate counsel claim:

> The *Trombetta* claim is stronger than the claims on my appeal because the 20 gauge Shotgun is materially exculpatory and my only fair chance at an acquittal. My entire Self-defense claim rest[s] on being able to prove Joe Bythewood possessed and brandished this weapon against me. The possibility of a different outcome exist[s] had this exculpatory evidence been preserved in its original condition as found by Police.

---

[6] As Respondent points out, this firearm was not destroyed, but was produced by the State at trial.

*Id.*. at PageID 4163.  The record does not contain evidence that a *Trombetta* claim in the trial court would have been successful.  There is no proof of police bad faith and indeed no proof the firing pin was in the shotgun at the time of the incident.  Far more important than the presence of a firing pin would have been Petitioner's reasonable belief that the weapon was operable.  Given that the shotgun was preserved for trial and available for the jury to see, it was in a position to credit or discredit Petitioner's fear.  Because a *Trombetta* claim would likely have been unsuccessful in the trial court and there is insufficient evidence in the record to support such a claim on direct appeal, it was not ineffective assistance of appellate counsel to fail to raise this claim of ineffective assistance of trial counsel. Other assignments of error actually raised on direct appeal and whose merit Petitioner continues to assert at length in this habeas corpus proceeding completely belie his claim in his Application to Reopen that his *Trombetta* claim was his best hope of victory.  Staring down the barrel of the twenty gauge, Petitioner was no better placed to see the firing pin than anyone would be in that position.

Ground Six is without merit and should be dismissed.

**Ground Seven:  Mandatory Retroactive Application of a Change in the Burden of Proof on Self-Defense**

In his Seventh Ground for Relief, Petitioner asserts that a change in the statutory burden of proof for self-defense must be applied retroactively to his case.

At the time of Shine-Johnson's trial, self-defense was an affirmative defense under Ohio law with the defendant having the burden of going forward and of persuasion by a preponderance of the evidence as provided in Ohio Revised Code § 2901.05(A).  *Shine-Johnson I*, ¶ 61. According to the Petition, that statute was amended by H.B. 228, effective March 28, 2019, to

42

change the burden of proof (ECF No. 3, PageID 76).

Shine-Johnson asserts he did not raise his retroactivity claim on direct appeal because his appeal had become final before H.B. 228 was adopted. *Id.* He did, however, file a motion to vacate void conviction under Ohio Revised Code § 2953.21which he says raised this claim. (Am. State Court Record, ECF No. 45-1, Ex. 94). The Franklin County Court of Common Pleas decided the claim on the merits. It found that September 10, 2015, was the date of the offense and the defendant's date of conviction was February 24, 2017 (Entry, State Court Record ECF No. 45-1, PageID 4331). H.B. 228 was passed after that and not made retroactive. *Id.*

On appeal the Tenth District did not reach the merits, but found the trial court lacked jurisdiction because the petition was untimely. *Shine-Johnson II.* The Supreme Court of Ohio declined to accept appellate jurisdiction. *State v. Shine-Johnson*, 160 Ohio St. 3d 1498 (2020). The Magistrate Judge agrees with Petitioner that he has exhausted all state court remedies available to him on this claim. Although Respondent asserts the claim is procedurally defaulted, he does not suggest it is not exhausted. Because the claim did not become available until March 28, 2019, it does not appear Petitioner could have raised it in a timely petition for post-conviction relief; the time for filing such a petition expired before H.B. 228 was enacted. This Court may therefore consider the Seventh Ground for Relief on the merits.

Shine-Johnson does not rely on any evidence that the Ohio General Assembly intended for H.B. 228 to be applied retroactively. Under Ohio law, "A statute is presumed to be prospective in its operation unless expressly made retrospective." Ohio Rev. Code § 1.48. H.B. 228 was not made expressly retrospective and Shine-Johnson cites no Ohio case law finding the presumption of prospective operation has been overcome.

Instead of relying on any Ohio law, Shine-Johnson relies directly on the Fourteenth

Amendment, arguing "the State must apply the law retroactively as a matter of federal due process where the law changed while he was under direct review and the petitioner objected to misstatements of the burden of proof on self-defense (Traverse, ECF No. 81, PageID 6280).

As authority to support this proposition, Shine-Johnson relies on *Schriro v. Summerlin,* 542 U.S. 348 (2004), but that case does not support the proposition for which it is cited.  In *Ring v Arizona*, 536 U.S. 584 (2002), the Supreme Court had held that an aggravating factor necessary to make a defendant death-eligible had to be found by a jury, applying to this situation its prior decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that all elements of a crime must be proven to the finder of fact by proof beyond a reasonable doubt.  The Ninth Circuit Court of Appeals then applied *Ring* retroactively to invalidate a death sentence pronounced before *Ring* was decided because *Ring* announced a procedural new rule rather than a substantive one.  Importantly, *Schriro* is about retroactive application of new Supreme Court constitutional rulings and says nothing about retroactive application of new state statutes. *United States v. United States Coin & Currency,* 401 U.S. 715 (1971), also relied on by Petitioner, is also about retroactive application of a decision of the Supreme Court itself, not any statute.

Shine-Johnson next argues that H.B. 228 has made the absence of self-defense an element of murder by requiring that it be proved beyond a reasonable doubt.  If absence of self-defense were indeed made an element of murder, then the State would have to prove its absence beyond a reasonable doubt.  But that is not what H.B. 228 does.  Instead it provides that

> If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

44

Ohio Revised Code § 2901.05.  In other words, the State only has to prove the absence of self-defense if the evidence raises that issue.  Obviously there are many cases of murder where no evidence of self-defense is presented.  And the fact that the legislature requires a fact to be proved beyond a reasonable doubt does not make that fact an element of the crime.  The General Assembly is free to require a higher degree of proof of a fact if it sees fit to do so as a matter of public policy.

Petitioner next argues how the Second Amendment's right to keep and bear arms shows there is a constitutional right to the defense of self-defense (Traverse, ECF No. 81, PageID 6285-86).  Within the last year, the Sixth Circuit has held that the Supreme Court has never held that the right to present a defense squarely establishes a constitutional right to present a defense of self-defense.  *Keahey v. Marquis*, 978 F.3d 474, 478 (6th Cir. 2020), citing *Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)*.

Quoting the Report of the Technical Committee on the proposed new Ohio criminal code in 1971, Shine-Johnson argues that even under the pre-H.B.228 statute, all he had to do was raise a reasonable doubt:

> The plain import of this language is that when the burden of going forward with the evidence of an affirmative defense is placed upon the defendant, it is intended that the defendant need only raise a reasonable doubt of his guilt in order to gain acquittal, and need not prove the defense by a preponderance of the evidence, or any other standard.

Whatever the Technical Committee may have thought was appropriate fifty years ago, the new criminal code that became effective January 1, 1974, placed the burden of going forward  with evidence of self-defense and the burden of persuasion by a preponderance of the evidence on the defendant and the Supreme Court of the United States expressly upheld that arrangement.  *Martin v. Ohio,* 480 U.S. 228 (1987).  Shine-Johnson cites *Martin* but says it does not decide the question whether Ohio law as it existed before H.B. 228 was constitutional (Traverse, ECF No. 81, PageID

6292).  On the contrary, it does precisely that.

Shine-Johnson concludes this section of his Traverse by claiming H.B. 228 embodies the "modern" understanding of self-defense and "[T]he Burden of proof never the less [sic] is interpreting a constitutional dimension. Therefore this raise[s] federal due process where the petitioner cannot be convicted of a lawful act."  (ECF No. 81, PageID 6289).  Federal habeas corpus courts do not decide cases by adverting to "constitutional dimensions."  Further, we can grant habeas relief only the petitioner shows his conviction violates the Constitution in a way specified in a holding of the United States Supreme Court.  Petitioner has cited no case in which the Supreme Court has held a state statute liberalizing the burden of proof on an affirmative defense must be applied retroactively.

Shine-Johnson argues that "[u]nder federal law the amendments R.C. 2901.05 would only be prohibited from being applied retroactively if the new amendment harmed the defendants vested rights." (Traverse, ECF No. 81, PageID 6297).  The Magistrate Judge agrees, but the legislature did not act to make the amendments retroactive.  Had it done so, Petitioner and the perhaps hundreds of persons serving long sentences who claimed self-defense but were not believed would be entitled to new trials under the new burden of proof.  But the General Assembly did not do that, perhaps because hundreds of new trials would be required.  Undoubtedly the General Assembly wanted to bring the self-defense statute more in line with its own views of good public policy, but that does not mean it wanted to make the "modernization," as Shine-Johnson calls it, apply to convictions which had already happened.

Shine-Johnson seeks to narrow the impact of his argument by claiming the new law became effective before his conviction became final.  H.B. 228 became effective March 28, 2019.  The conviction became final on direct appeal when Supreme Court of Ohio declined to exercise

appellate jurisdiction on May 8, 2019, forty days later (Entry, State Court Record, ECF No. 45, Ex. 73).  But Shine-Johnson did not attempt to put this issue before the Supreme Court of Ohio before his case became final.  When Shine-Johnson sought to file a delayed appeal *pro se* on June 13, 2019, he made no mention of this change in the law which he now claims invalidates his conviction.  (Notice of Appeal, State Court Record, ECF No. 45, Ex. 74) or in his later Motion for Reconsideration. *Id.* at Ex. 77).  Indeed, he never raised this claim of retroactivity until he filed his untimely Petition for Post-Conviction Relief filed April 29, 2019, thirteen months after H.B. 228 became effective. *Id.* at Ex. 94.  If the fact that his conviction was not final when H.B. 228 became effective has any legal significance (which Shine-Johnson has not explained), why did he wait thirteen months to present the argument to the Ohio courts?

Petitioner concludes his argument on Ground Seven:

> Habeas relief Should [sic] be granted because there was an unquestionable and egregious violation in this case because Federal Due Process requires relief when Redefining [sic] the burden of proof placed upon a defendant, whether it be by a new constitutional rule or by a new statutory interpretation of constitutional dimension, has a substantial impact upon a criminal trial's truth-finding function. In such situations retroactive application is imperative. *Hankerson, supra,* at 432 U.S. at 241, 97 S. Ct. 2339, 53 L. Ed. 2d 306 [1977], quoting *Ivan V. v. City of New York*, 407 U.S. 203. 204-05. 92 S. Ct. 1951. 1952. 32 L Ed. 2d 659. 661 (1972).

(Traverse, ECF No. 81, PageID 6301).  In *Hankerson*, the Supreme Court decided that its own prior **constitutional** decision in *Mullaney v. Wilbur*, 421 U.S. 684 (1975), was to be applied retroactively.  *Hankerson* and *Mullaney* were handed down many years before the Supreme Court rationalized its doctrine on the retroactivity of its constitutional decisions in *Teague v. Lane*, 489 U.S. 288 (1989), and their current force in light of *Teague* is questionable.  But much more importantly they are about the retroactive application of Supreme Court decisions, not new state statutes.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

March 29, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.

**NOTICE REGARDING RECORD CITATIONS**

As noted above, Petitioner's Traverse is more than two hundred pages long. It contains literally hundreds of citations to the record in this case, none of which comply with S. D. Ohio Civ. R. 7.2(b)(5) which provides:

(5) **Pinpoint Citations**. Except for Social Security cases, which must comply with S.D. Ohio Civ. R. 8.1(d), all filings in this Court that reference a prior filing must provide pinpoint citations to the PageID number in the prior filing being referenced, along with a brief title and the docket number (ECF No. ___ or Doc. No. ___) of the document referenced.

Petitioner is strongly cautioned that his Objections, if he files any, **MUST** comply with this Rule.

Petitioner has been furnished by the State with a copy of the State Court Record which includes

the information necessary to comply with this Rule and thus has no excuse for non-compliance.

Objections which do not comply (i.e. which do not give the docket number and PageID number)

will be stricken.