# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

| JOSEPH SHINE-JOHNSON, | : | |
|---|---|---|
| Petitioner, | : | Case No. 2:20-cv-1873 |
| - vs - | : | Chief Judge Algenon L. Marbley |
| | : | Magistrate Judge Michael R. Merz |
| WARDEN, Belmont Correctional Institution, | : | |
| Respondent. | : | |

## OPINION AND ORDER

### I. INTRODUCTION

This habeas corpus case, brought *pro se* by Petitioner Joseph-Shine Johnson, is before the Court on Petitioner's Objections (ECF No. 89) to the Magistrate Judge's Report and Recommendations recommending the Petition be dismissed with prejudice (ECF No. 85). Respondent has timely replied to the Objections (Response, ECF No. 91).

Under Fed.R.Civ.P. 72(b), a District Judge is required to review *de novo* all portions of a Magistrate Judge's report and recommendations on a dispositive matter to which substantial objection is made. This decision is a result of that review.

### II. BACKGROUND

Petitioner's first objection is to the Report's factual analysis (ECF No. 89, PageID 6460-62).

In the Factual Analysis portion of the Report, the Magistrate Judge noted that Petitioner's Traverse was 241 pages long and contained "literally hundreds of record citations, none of which complies with this Court's record citation rule. . .," that is, by providing a PageID pinpoint citation

1

so the Court can find the cited material without combing through hundreds or thousands of pages of transcript. (Report, ECF No. 85, PageID 6330). In his Objections, Petitioner offers as an excuse that the PageID references in the record are obscured because the CM/ECF header overprints the date-stamp of the Franklin County Clerk of Courts. (Objections, ECF No. 89, PageID 6460-61). Upon examination, however, the Court finds there is no overprinting at all for the first 1, 656 pages. The overprinting phenomenon is confined to the trial transcript, and does not make the PageID number obscure. See, for example, PageID 1669, 1816, 1937, 2200, 2425, 2632, 2751, 2862, and 2939, pages chosen by the Court completely at random. Petitioner's excuse for not providing correct page citations is completely ungrounded in fact.

Petitioner objects to the Magistrate Judge's refusal to allow him to file an amended traverse (ECF No. 89, PageID 6461, citing ECF No. 56 [*sic*; ECF No. 86 is the relevant document], PageID 6383-85). However, he did not tender (and has never since tendered) an amended traverse that complies with the pinpoint citation rule. Moreover, his time to object to the denial of an amended traverse has long since expired. Provision of time to object to a dispositive report and recommendations does not reopen all prior decisions in the case to objection.

Regarding the merits of the factual analysis, the Report concluded that this long section of the Traverse was largely committed to pointing out inconsistencies in the trial testimony and that the resolution of inconsistencies was within the province of the jury (ECF No. 85, PageID 6331. Petitioner objects that he has "with clear and convincing evidence rebutted the state court determination of relevant historical facts on the record and had nothing to do with credibility." This is pure conclusion with no supporting references or citations to authority about why jury resolution of inconsistencies in the evidence is not a matter of credibility. Simple assertion is not proof.

The Court finds no error in the Report's deference to state court fact-finding under 28 U.S.C. § 2254(d)(2). Petitioner's Objections to the Report's factual analysis are OVERRULED.

## III. PROCEDURAL DEFAULT

The Report concluded that Grounds One (prosecutorial misconduct), Two (failure to give a curative instruction), Three (failure to give a requested instruction), Four (ineffective assistance of trial counsel), and Five (cumulative trial court error)[1] were procedurally defaulted. Petitioner objects that he "gave cause for any perceived procedural default on grounds **one, two, three, four and five** because the violation of Agency laws by counsel." (Objections, ECF No. 89, PageID 6462.) He also claims he sought a hearing on the procedural default issue, but one was not granted. *Id.* He then objects to the Magistrate Judge's denying "discovery and evidence" in support of cause and prejudice *Id.*., citing ECF No. 54.

Regarding Petitioner's request for discovery on his claim of ineffective assistance of appellate counsel, the Magistrate Judge wrote:

> Ground Six where Petitioner alleges his appellate attorney provided ineffective assistance by failing to claim the trial attorney provided ineffective assistance by not filing a motion to dismiss for altering and destroying exculpatory evidence significant to the Petitioner's defense denying the Petitioner a chance to raise a complete defense (Petition, ECF No. 1, PageID 70). This claim of ineffective assistance of appellate counsel could only prevail if the appellate record showed (a) that such a motion was not filed and (b) that it would have been meritorious. Whether it was filed or not would certainly have been in the record. But if proof of the second part of the claim was dependent on evidence outside the appellate record (e.g., that there was destruction of exculpatory evidence), that evidence would have had to be presented in a petition for post-conviction relief, not on direct appeal. Hence it cannot have been ineffective assistance of appellate counsel to fail to make this argument and no discovery is needed on this point.

(Decision and Order, ECF No. 54, PageID 5943.) Petitioner objected to this conclusion (ECF No. 67), but the Court finds the Magistrate Judge's denial of discovery on this claim was neither clearly erroneous on the facts nor in error on the law. Petitioner's Objections are therefore OVERRULED.

---

[1] As Respondent points out, the Magistrate Judge also found Ground Five to be non-cognizable in habeas corpus.

To the extent Petitioner relied on ineffective assistance of appellate counsel to excuse his procedural default, he has not proven that ineffective assistance for the reasons given below, principally because the alleged omissions were before the Supreme Court of Ohio where defendants are not guaranteed counsel by the Sixth Amendment. The right to appointed counsel extends to the first appeal of right and no further. *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974). Ineffective assistance of counsel can excuse procedural default only when it occurs in a proceeding where a defendant is constitutionally entitled to counsel under the Sixth Amendment. *Wainwright v. Torna*, 455 U.S. 586 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective counsel); *Riggins v. Turner*, 1997 U.S. App. LEXIS 6115, *5 (6th Cir. 1997); *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio 2002).

Petitioner seeks to avoid this problem by claiming that it is agency law, not ineffective assistance law, which is applicable (Objections, ECF No. 89, PageID 6463-64, citing Restatement (second) of Agency§ 385 (1958), and 1 Restatement (Third) of Law Governing Lawyers § 31, Comment (1998). However, as the cited cases hold, only ineffective assistance of counsel in a proceeding in which there is a constitutional guarantee of effective counsel will excuse a procedural default in the relevant proceeding. To put it another way, violating the law of agency does not amount to an excusing constitutional violation.

In accusing his attorney in the Supreme Court of Ohio of failing to present meritorious claims, he merely states "[t]he attorney forwent all meritorious claims against the known wishes of the petitioner…" (ECF No. 89, PageID 6463). He does not state what those claims were and why they were meritorious. In correspondence with Petitioner, his Supreme Court attorney explained that he had not been appointed by the Tenth District Court of Appeals to exhaust for

4

purposes of federal habeas corpus all claims Petitioner might have made at some point, but rather to determine if there was a colorable issue on which the Supreme Court of Ohio might take jurisdiction of the case (State Court Record, ECF No. 45, PageID 3713). He did that, raising a claim about proper construction of the defense of self-defense in Ohio (Memorandum in Support of Jurisdiction, State Court Record, ECF No. 45, Ex. 71).

Petitioner goes so far as to accuse the Tenth District Court of Appeals of attempting to sabotage his case by appointing counsel for the Supreme Court of Ohio stage (Objections, ECF No. 6468). On the contrary, the Court finds the Tenth District likely appointed counsel to give Petitioner the best chance he had of prevailing on his self-defense argument, given that the appellate panel was divided. There simply is no evidence of such improper conduct by the Tenth District.

Turning from ineffective assistance to actual innocence as an excuse for procedural default, Petitioner objects to the Report's rejection of the Affidavit of Alexis Quinn as proof he is actually innocent (ECF No. 89, PageID 6469). The Magistrate Judge accepted the Quinn Affidavit into evidence, even though it was not presented to the state courts, but concluded it was not the kind of evidence of actual innocence required by *Schlup v. Delo,* 513 U.S. 298 (1995), and *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005), the controlling precedent (Report, ECF No. 85, PageID 6343.) The Court finds the Magistrate Judge's conclusion is consistent with *Schlup* and *Souter* and the Quinn Affidavit does not prove Shine-Johnson is actually innocent so as to excuse procedural defaults.

In sum, the Court finds the Magistrate Judge's conclusion that Grounds One, Two, Three, Four, and Five are procedurally defaulted is not contrary to law and is hereby ADOPTED. Petitioner's Objections as to procedural default are OVERRULED.

## IV. LAW AND ANALYSIS

Petitioner objects to the Report's conclusion that Grounds One, Two, Three, Four, Five, Six, and Seven should be dismissed on the merits (ECF No. 89, PageID 6472). These Objections are considered *seriatim* as to each Ground for Relief.

### A. Ground One: Prosecutorial Misconduct

In his First Ground for Relief, Shine-Johnson asserts the prosecutor committed misconduct by misstating the law of self-defense to the jury. The Report concluded the decision of the Tenth District that there was no misconduct because there was no misstatement of the law was entitled to deference under 28 U.S.C. § 2254(d)(1) because it was neither contrary to nor an objectively unreasonable application of any clearly established United States Supreme Court precedent (ECF No. 85, PageID 6343-45).

As to what the Ohio law on self-defense was at the time of trial, the Report held this Court must defer to the Tenth District's decision (ECF No. 85, PageID 6345, citing *Bradshaw v. Richey*, 546 U.S. 74 (2005)). Petitioner objects that instead of deferring to an intermediate court of appeals statement of state law, we are bound to apply decisions of the highest state court (ECF No. 89, PageID 6473, citing *Ruth v. Bituminous Casualty Corp.* 427 F.2d 290, 292 (6th Cir. 1970)). He then claims the Supreme Court of Ohio would decide this issue differently than the Tenth District did. However, he cites no case in which the Supreme Court of Ohio has decided the issue differently and that court refused to take jurisdiction of an appeal in this very case.

A federal court exercising supplemental or diversity subject matter jurisdiction over state law claims must apply state substantive law to those claims. 28 U.S.C. § 1652; *Gasperini v. Center for Humanities, Inc.*, 528 U.S. 415, 427, n. 7 (1996); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), overruling *Swift v. Tyson*, 41 U.S. 1 (1841)(Story, J., holding that "the laws of the several states" in the Judiciary Act of 1789 means only the statutory law of the States). In applying state

law, the Sixth Circuit follows the law of the State as announced by that State's supreme court when it is deciding a state law question in the first instance. *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008); *Ray Industries, Inc. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 758 (6th Cir. 1992); *Miles v. Kohli & Kaliher Assocs.,* 917 F.2d 235, 241 (6th Cir. 1990). "Where the state supreme court has not spoken, our task is to discern, from all available sources, how that court would respond if confronted with the issue." *Id.;* In re Akron-Cleveland Auto Rental,  Inc., 921 F.2d 659, 662 (6th Cir. 1990); *Bailey v. V & O Press Co*., 770 F.2d 601 (6th  Cir. 1985); *Angelotta v. American Broadcasting Corp.,* 820 F.2d 806 (1987).

Shine-Johnson contends this same rule applies when a federal habeas court is reviewing in a given case the state courts' application of that State's law (Objections, ECF No. 89, PageID 6474, claiming "[t]his court has adopted this rationale in 2254 cases as well.")  He cites *Meyers v. Ohio,* 2016 U.S. Dist. LEXIS 30921 (N.D.[2] Ohio Jan. 21, 2016)(Baughman, Magistrate Judge), adopted at 2016 U.S. Dist. LEXIS 30920 (N.D. Ohio Mar. 9, 2016)(Oliver, Ch. J.).  Judge Baughman recites the general principle

> It is well-settled that "it is not the province of the federal habeas court to reexamine state-court determinations of state-law questions." quoting Estelle v. McGuire, 502 U.S. 62, 68 (1991). Moreover, federal habeas courts are bound by decisions of intermediate state courts on questions of state law unless convinced that the state's highest court would decide the issue differently, Olsen v. McFaul, 843 F.2d 918, 929 (6th Cir. 1988).

*Meyers* at * 17-18.  In *Olsen* the Sixth Circuit did indeed ignore, in a habeas case, an unpublished appellate opinion in the case in suit because the Ohio appellate court had itself "apparently ignore[ed]" a long-standing rule of Ohio law stated in Frisbie Co. v. City of East Cleveland, 98 Ohio St. 266, 120 N.E. 309 (1918), which the Sixth Circuit found

---

[2] The U.S. District Court for the Northern District of Ohio is, of course, not "this Court," but our respected sister court.

> continues to be followed and cited with approval, is the law in Ohio, and we see no indication that it has received a narrowing construction in recent years. If a civil appeal based upon diversity jurisdiction turned upon the question of whether a city may be obligated to a contractor absent compliance with city charter requirements, we would have little trouble ascertaining the applicable Ohio rule.

843 F.2d at 929.

This Court accepts from *Olsen* the proposition that it may look to clear Supreme Court of Ohio law when it is contrary to the appellate court decision to the contrary in a habeas case. But Petitioner's Objections stop at that point[3]. He does not cite any Supreme Court of Ohio authority contrary to the Tenth District's decision in this case. In discussing the defense of self-defense, the Tenth District expressly relied on Ohio Supreme Court authority. *State v. Shine-Johnson*, 2018-Ohio-3347 ¶¶ 30-31 (Ohio App. 10th Dist. Aug. 21, 2018)("*Shine-Johnson I*"), appellate jurisdiction declined, 155 Ohio St. 3d 1439 (2019), citing *State v. Martin,* 21 Ohio St.3d 91, 94 (1986); *State v. Williford,* 49 Ohio St.3d 247, 249 (1990), citing *State v. Robbins,* 58 Ohio St.2d 74 (1979), paragraph two of the syllabus, and *State v. Thomas,* 77 Ohio St.3d 323, 327 (1997). Petitioner has not persuaded this Court that the Supreme Court of Ohio would have decided his claims about misstatement of the law of self-defense differently from the Tenth District. Particularly pertinent is ¶ 33:

> Appellant has not cited cases in which, despite the definitions in R.C. 2901.05(D), the no duty to retreat exception extends to a similar factual situation to the case at hand, where, after an altercation with a cohabitant inside of the home, the defendant fires the fatal shot from the yard.

---

[3] Petitioner claims Magistrate Judge Merz's opinion here is contrary to his prior decision in *Hunter v. Ohio AG*, 2017 U.S. Dist. LEXIS 70610 (S.D. Ohio May 9, 2017.) That opinion was filed not by Magistrate Judge Merz, but by Chief Magistrate Judge Karen L. Litkovitz. Judge Litkovitz's opinion in *Hunter* is not contrary to that of Judge Merz in this case.

*Shine-Johnson I*. This case is nothing like *Olsen* where the Ohio court of appeals (for the Eighth, not the Tenth District) "apparently ignored" long-standing controlling Ohio Supreme Court precedent. Here the Tenth District followed Ohio Supreme Court precedent rather than ignoring it.

### B. Ground Two: Failure to Give Curative Instructions

In his Second Ground for Relief, Shine-Johnson claims he was denied a fair trial because the trial court failed to give a curative instruction on the prosecutor's claim in closing argument that Shine-Johnson had essentially admitted to murder, defined as Ohio law does as a "purposeful killing." The Tenth District found there was no error to be cured and, in any event, defense counsel had failed to make a contemporaneous objection. *Shine-Johnson I* at ¶¶ 111-12.

The Report concluded Ground Two should be dismissed as procedurally defaulted for lack of a contemporaneous objection and failure to raise it on direct appeal to the Supreme Court of Ohio. The Magistrate Judge found no constitutional merit to the claim because it was entirely dependent on state law.

Petitioner objects that the Tenth District's decision that there was no contemporaneous objection is an error of state law (Objections, ECF No. 89, PageID 6487, citing *State v. Tudor*, 154 Ohio St. 249 (1950)). At the time *Tudor* was decided, the "syllabus rule"[4] prevailed in Ohio, but the syllabus in *Tudor* says nothing about contemporaneous objections. Moreover, the *Tudor* court cites statutes from 1936 and 1945 about limitations on appeal which have been abolished by adoption of the Ohio Revised Code in 1954 and the Ohio Rules of Procedure under the Modern

---

[4] The syllabus rule was adopted in 1858. It provided that supreme court opinions would no longer have reporter's headnotes, but rather a syllabus written by the judge assigned to deliver the opinion of the court. The law was announced as a series of theoretical propositions, devoid of the author's voice. The syllabus rule was abolished in 2002, but case law from before that time should be read as announcing the law only in the syllabus.

9

Courts Amendment after 1968. *Tudor* does not stand for the proposition that the objection made here – after closing argument concluded – is sufficiently "contemporaneous" to qualify under Ohio practice.

Petitioner accuses the Tenth District of engaging in "an obvious subterfuge to evade consideration of a federal issue" (Objections, ECF No. 89, PageID 6487). The Court disagrees. Having noted the lack of a contemporaneous objection, the Tenth District went on to decide the merits of the federal claim, albeit unfavorably to Petitioner. *Shine-Johnson I* at ¶ 112. As the Report notes, this is a question of the state law of self-defense. Petitioner has not shown that decision is contrary to any Ohio Supreme Court precedent or any clearly established law from the United States Supreme Court.

As to Ground Two, the Report is ADOPTED and Petitioner's Objections are OVERRULED.

### C. Ground Three: Failure to Give Requested Instructions

In his Third Ground for Relief, Shine-Johnson claims he was deprived of a fair trial when the trial court refused to give certain requested jury instructions.

The first instruction omitted by the trial court which Petitioner argues was constitutionally required was his proposed instruction dealing with the duty of a cohabitant of a residence to retreat in the face of deadly force. As the Report notes, Shine-Johnson spends some fifty pages of his Traverse arguing what the self-defense instruction should have been (ECF No. 85, PageID 6352, citing Traverse, ECF No. 81, PageID 6197-6241). The Magistrate Judge concluded, as had the Tenth District, that Petitioner has cited no decision by the Supreme Court of Ohio requiring a "no duty to retreat from a cohabitant" instruction when the shooting indisputably takes place outside the residence (Report, ECF No. 85, PageID 6354).

Petitioner objects at length, substantially reprising his argument in the Traverse about what the Ohio law of self-defense requires (Objections ECF No. 89, PageID 6489-6502). None of this argument cites a Supreme Court of Ohio decision that there is no duty to retreat when the shooting

takes place outside the residence.

The second omitted instruction was Shine-Johnson's requested instruction limiting the jury's consideration of his flight from the scene. The Report noted the Tenth District's decision that the instruction was completely consistent with Ohio law. Petitioner makes no objection this conclusion and it is ADOPTED.

Petitioner does object to the Report's upholding admission of character evidence (Objections, ECF No. 89, PageID 6502-04). The Tenth District found that the supposed fact – that Shine-Johnson had been violent towards a younger relative -- was justified by Petitioner's having "opened the door" with evidence of his own peacefulness and any possible damage was cured by a limiting instruction. *Shine-Johnson I* ¶¶ 40-45. The Report concluded there was no Supreme Court precedent to the contrary and recommended this claim be dismissed on the merits (ECF No. 85, PageID 6358).

Petitioner objects, but mainly with cases generally reciting the difficulties with character evidence (Objections, ECF No. 89, PageID 6502-04). Shine-Johnson concludes in summary fashion: "The court decision is not founded in Ohio law and is an objectively unreasonable determination of the fact and contrary to clearly established federal law. The Magistrate is misconstruing the constitutional violation and ignoring the supporting facts and laws." *Id*. However Petitioner cites none of the supposedly contrary Ohio or Supreme Court precedent. The Sixth Circuit has held "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*. 502 U.S. 62 (1991). Petitioner's Objection to the trial court's limiting instruction on character evidence is OVERRULED.

11

### D. Ground Four: Ineffective Assistance of Trial Counsel

In his Fourth Ground for Relief, Petitioner claims he received ineffective assistance of trial counsel. He agrees that the governing standard is set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). He then enumerates counsel's failure to object to the prosecutor's closing argument and other instances of alleged prosecutorial misconduct.

The Tenth District rejected this claim on direct appeal, holding that the prosecutor did not commit misconduct and therefore Petitioner suffered no prejudice from his attorney's failure to object. *Shine-Johnson I,* ¶¶ 120-22. The Report recommended deferral to this decision, noting that there can be no prejudice from failure to object when the objection was without merit (ECF No. 85, PageID 6361-62).

Petitioner objects, essentially reiterating that his argument on Ground One (prosecutorial misstatement of the law of self defense) is valid and counsel should have objected (Objections, ECF No. 89, PageID 6504-05). Having rejected that argument above, the Court has no need to repeat its analysis here. The Report's conclusion on Ground Four is ADOPTED.

### E. Ground Five: Cumulative Trial Court Error

In his Fifth Ground for Relief, Shine-Johnson asserts the accumulated errors of the trial court entitle him to relief. The Magistrate Judge rejected that claim based on precedent holding a cumulative error claim is no longer cognizable in habeas after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA")(ECF No. 85, PageID 6262-63).

Petitioner objects, citing Second, Third, and Ninth Circuit decisions which are not controlling precedent here; they cannot effectively displace the Sixth Circuit decisions cited in the Report. He also cites *Simpson v. Warren*, 475 Fed. Appx. 51 (6th Cir. 2012). Simpson is a case concerning

the cumulative effect of various instances of prosecutorial misconduct, not trial court error, as Petitioner urges here.

Petitioner's Objections on Ground Five are OVERRULED and the Report is ADOPTED.

### F. Ground Six: Ineffective Assistance of Appellate Counsel

In his Sixth Ground for Relief, Shine-Johnson claims he received ineffective assistance of appellate counsel when his appellate attorney failed to raise as an assignment of error his trial counsel's failure to file a motion to dismiss because the State had destroyed exculpatory evidence.

Claims of ineffective assistance of appellate counsel in Ohio are required to be made in an application to reopen the appeal under Ohio R. App. P. 26(B). Shine-Johnson's 26(B0 was two days late and rejected by the Tenth District as untimely. The Magistrate Judge found that procedural default was excused because the mailing of the 26(B) was delayed by prison officials, allowing this Court to reach the merits (Report, ECF No. 85, PageID 6363-64).

The substance of Petitioner's ineffective assistance of appellate counsel claim is that his appellate attorney should have claimed trial counsel was ineffective for failure to file a motion to dismiss under *California v. Trombetta,* 467 U.S. 479 (1984), based on the condition at the time of trial of the 20 gauge shotgun with which the decedent allegedly threatened Shine-Johnson.

> The twenty gauge shotgun with which the decedent is claimed to have threatened Petitioner did not have a firing pin at the time of trial[5] and had been disassembled after it was taken into police custody. Petitioner's theory seems to be that the police deliberately removed the firing pin and destroyed it so as to undermine Petitioner's claim that he feared for his life with the shotgun in his father's hands.

(Report, ECF No. 85, PageID 6366). The Report concluded a *Trombetta* claim would have been unsuccessful:

---

[5] As Respondent points out, this firearm was not destroyed, but was produced by the State at trial.

> The record does not contain evidence that a *Trombetta* claim in the trial court would have been successful. There is no proof of police bad faith and indeed no proof the firing pin was in the shotgun at the time of the incident. Far more important than the presence of a firing pin would have been Petitioner's reasonable belief that the weapon was operable. Given that the shotgun was preserved for trial and available for the jury to see, it was in a position to credit or discredit Petitioner's fear. Because a *Trombetta* claim would likely have been unsuccessful in the trial court and there is insufficient evidence in the record to support such a claim on direct appeal, it was not ineffective assistance of appellate counsel to fail to raise this claim of ineffective assistance of trial counsel. Other assignments of error actually raised on direct appeal and whose merit Petitioner continues to assert at length in this habeas corpus proceeding completely belie his claim in his Application to Reopen that his *Trombetta* claim was his best hope of victory. Staring down the barrel of the twenty gauge, Petitioner was no better placed to see the firing pin than anyone would be in that position.

(ECF No. 85, PageID 6367). The Report recommended dismissing Ground Six on the merits. *Id.*

Petitioner objects "[t]he 20-gauge Shotgun was obviously and apparently exculpatory before the state took the gun apart" (ECF No. 89, PageID 6508). The Court agrees that the shotgun had exculpatory value when testimony placed it in the hands of the decedent during the altercation. Indeed, the fact that his father was armed was key to Shine-Johnson's self-defense claim. But the State did not destroy that exculpatory value by disassembling the gun for analysis. It was still there, produced by the State at trial for the jury to look at. The State made no claim that it had been found at the murder scene disassembled and explained the reasons for disassembling it.

In any event, Petitioner has offered no evidence that the State acted in bad faith in disassembling the shotgun, a necessary element of a *Trombetta* claim. Nor has Petitioner persuaded the Court that a claim of ineffective assistance of trial counsel for not making a *Trombetta* claim would have been stronger than the appellate arguments presented, especially given Petitioner's strong insistence of the self-defense construction claim.

Therefore, the Report's conclusions on Ground Six are ADOPTED and Petitioner's

Objections are OVERRULED.

### G. Ground Seven: Mandatory Retroactive Application of a Change in the Burden of Proof on Self-Defense

In his Seventh Ground for Relief, Petitioner asserts that a change in the statutory burden of proof for self-defense, made effective by the General Assembly as of March 28, 2019, must be applied retroactively to his case when the offense occurred September 10, 2015, and Shine-Johnson was convicted February 24, 2017.

Under Ohio law, "A statute is presumed to be prospective in its operation unless expressly made retrospective." Ohio Rev. Code § 1.48. H.B. 228, the statute in question, was not made expressly retrospective, so Petitioner relies directly on the Fourteenth Amendment. (Traverse, ECF No. 81, PageID 6280). The Court agrees with the Report that the cases cited by Petitioner do not clearly establish that a state statute modifying the burden of proof on an affirmative defense must be applied retroactively. In fact, the Supreme Court has expressly upheld the constitutionality of Ohio's self-defense provisions as they existed before H.B. 228 became effective. *Martin v. Ohio,* 480 U.S. 228 (1987).

Petitioner objects that the change made in Ohio law is of a type that the Supreme Court requires to be applied retroactively (ECF No. 89, PageID 6515, citing I*van V. v. City of New York*, 407 U.S. 203. 204-05 (1972)). In that case the United States Supreme Court held that its own decision in *In re Winship,* 397 U.S. 358 (1970), was to be applied retroactively. In the Report, the Magistrate Judge noted that the continued viability of the *Ivan* decision was questionable in light of *Teague v. Lane*, 489 U.S. 288 (1989) which held that new constitutional rules of criminal procedure will not be applicable to cases which have become final before the new rules are announced. Since the Report was filed, the Supreme Court has modified *Teague* to hold that no constitutional changes in criminal procedure will apply retroactively to cases pending on collateral review. *Edwards v.*

*Vannoy*, 593 U.S. ___, 141 S. Ct. 1547 (2021).

Therefore, Petitioner's Objections as to Ground Seven are OVERRULED and the Report is ADOPTED.

## V. CONCLUSION

Based on the foregoing analysis, the Report is ADOPTED and Petitioner's Objections are OVERRULED. The Clerk will enter judgment dismissing the Petition with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner is denied a certificate of appealability and the Court certifies to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

**IT IS SO ORDERED.**

                                        **ALGENON L. MARBLEY**
                                        **UNITED STATES DISTRICT JUDGE**

**DATED: July 6, 2021**