# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

**JOSEPH SHINE-JOHNSON,** :

    Petitioner, : Case No. 2:20-cv-1873

  - vs - : **Chief Judge Algenon L. Marbley**
      **Magistrate Judge Michael R. Merz**
  :

**WARDEN,**
  **Belmont Correctional Institution,** :

    Respondent. :

## OPINION AND ORDER

This habeas corpus case, brought *pro se* by Petitioner Joseph-Shine Johnson, is before the Court on Petitioner's Objections ("Objections," ECF No. 100) to the Magistrate Judge's Report and Recommendations (Report, ECF No. 99) recommending denial of Petitioner's Motion to Alter or Amend the Judgment ("59(e) Motion," ECF No. 98). The Warden has filed a timely Response to those Objections (ECF No. 101).

Being a post-judgment motion, the 59(e) Motion required a recommended disposition from the Magistrate Judge. A litigant who receives an adverse recommendation on a dispositive matter such as a motion under Fed.R.Civ.P. 59(e) is entitled to *de novo* determination of any portion of the recommendation to which substantial objection is made. This Opinion embodies the results of the Court's *de novo* review.

The Report correctly states the standard for a District Court to grant relief under Rule 59(e), "there must be '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 474 (6th Cir. 2009) (quoting *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479,

496 (6th Cir. 2006)); *Gencorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999), *accord, Nolfi v. Ohio Ky. Oil Corp.,* 675 F.3d 538, 551-52 (6th Cir. 2011), quoting *Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010).

A motion under Fed. R. Civ. P. 59(e) is not an opportunity to reargue a case. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)(citation omitted). Thus, parties should not use them to raise arguments which could and should have been made before judgment issued. *Id*. Motions under Rule 59(e) must establish either a manifest error of law or must present newly discovered evidence. *Id*. In ruling on a Fed.R.Civ.P. 59(e) motion, "courts will not address new arguments or evidence that the moving party could have raised before the decision issued. See 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §2810.1, pp. 163-164 (3d ed. 2012) (Wright & Miller); accord, *Exxon Shipping Co. v. Baker,* 554 U. S. 471, 485-486, n. 5, 128 S. Ct. 2605, 171 L. Ed. 2d 570 (2008) (quoting prior edition)." *Bannister v. Davis*, 140 S. Ct. 1698, 1703, 207 L.Ed. 2d 58 (2020).

Petitioner accepts the Report's statement of the standard for granting a Fed.R.Civ.P. 59(e)(Objections, ECF No. 100, PageID 7339). But instead of focusing on asserted errors in the Report, Petitioner then launches a broad attack on all prior decisions or recommendations made by the Magistrate Judge in the case.

Beginning at page 4, Petitioner again objects to the Court's analysis of procedural default (PageID 7341). In the 59(e) Motion, Petitioner had argued that his failure to include certain issues in his appeal to the Supreme Court of Ohio was excused by his attorney's failure to follow his instructions to include them. The Report concluded the failure to include these issues could not be excusing cause for the procedural default because ineffective assistance of counsel is excusing cause for omissions only in proceedings where the effective assistance of counsel is

2

constitutionally guaranteed (Report, ECF No. 99, PageID 6735, citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt,* 417 U.S. 600 (1974); and *Wainwright v. Torna,* 455 U.S. 586 (1982). Petitioner's Objections reargue the merits of the Court's procedural default analysis, but cite no authority that the Report is erroneous on this point (See Objections, ECF No. 100, PageID 7341-46 ).

Petitioner claims *Coleman v. Thompson*, 501 U.S. 722 (1991), supports his claim that agency law supplements ineffective assistance of counsel constitutional law to provide excusing cause for a procedural default. It does not. The relevant portion of Justice O'Connor's opinion for the Court in *Coleman* reads:

> Attorney ignorance or inadvertence is not "cause" because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must "bear the risk of attorney error." *[Murray v. Carrier,* 477 U.S.], at 488, 106 S.Ct., at 2645. See *Link v. Wabash R. Co.,* 370 U.S. 626, 634, 82 S.Ct. 1386, 1390–1391, 8 L.Ed.2d 734 (1962) (in "our system of representative litigation ... each party is deemed bound by the acts of his lawyer-agent"); *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 92, 111 S.Ct. 453, 456, 112 L.Ed.2d 435 (1990) (same). Attorney error that constitutes ineffective assistance of counsel is cause, however. This is not because, as Coleman contends, the error is so bad that "the lawyer ceases to be an agent of the petitioner." Brief for Petitioner 29. In a case such as this, where the alleged attorney error is inadvertence in failing to file a timely notice, such a rule would be contrary to well-settled principles of agency law. See, *e.g.,* Restatement (Second) of Agency § 242 (1958) (master is subject to liability for harm caused by negligent conduct of servant within the scope of employment). Rather, as *Carrier* explains, "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State." 477 U.S., at 488, 106 S.Ct., at 2646. In other words, it is not the gravity of the attorney's error that matters, but that it constitutes a violation of petitioner's right to counsel, so that the error must be seen as an external factor, *i.e.,* "imputed to the State."

*Coleman*, 501 U.S. at 754. Justice O'Connor expressly relies on *Wainrsight v. Torna, supra,* also

3

relied on by this Court in its procedural default analysis, for the proposition that attorney error in a proceeding where there is no constitutional right to effective assistance cannot be excusing cause.

Petitioner next reargues his actual innocence excuse for procedural default (Objections, ECF No. 100, PageID 7346-51). The Report concluded that Petitioner's Rule 59(e) Motion merely reargued this claim without showing any manifest error of law. The Objections merely repeat that approach. The Objections do not show the Report was contrary to law in rejecting this portion of the Rule 59(e) Motion.

### Ground One: Prosecutorial Misconduct

In Ground One Petitioner asserts his conviction for murdering his father should be set aside because the prosecutor misstated Ohio law on numerous occasions. The Tenth District Court of Appeals found no such misstatement and this Court deferred to that holding as it was required to do by *Bradshaw v. Richey*, 546 U.S. 74 (2005). In his 59(e) Motion Petitioner argued that the Tenth District had misread Ohio law. The Report analyzes each Ohio Supreme Court case cited by Petitioner and shows how it does not contradict the Tenth District's decision (ECF No. 99, PageID 6736-37).

Petitioner's Objections do not focus on any asserted error in the pending Report, but instead reargue at length the merits of the prosecutorial misconduct claim (ECF No. 100, PageID 7351-73).

Petitioner insists this Court has avoided dealing with his argument that the Tenth District's decision was an "obvious subterfuge to evade consideration of a federal issue." (Objections, ECF No. 100, quoting *Mullaney v. Wilbur*, 421 U.S. 684 (1975). The reference is to footnote 11 to Justice Powell's opinion for a unanimous Court which reads:

> On rare occasions the Court has re-examined a state-court interpretation of state law when it appears to be an 'obvious

4

> subterfuge to evade consideration of a federal issue.' *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 129, 65 S.Ct. 1475, 1480, 89 L.Ed. 2092 (1945). See *Ward v. Love County,* 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751 (1921); *Terre Haute & I.R. Co. v. Indiana ex rel. Ketcham,* 194 U.S. 579, 24 S.Ct. 767, 48 L.Ed. 1124 (1904). In this case the Maine court's interpretation of state law, even assuming it to be novel, does not frustrate consideration of the due process issue, as the Maine court itself recognized, *State v. Wilbur,* 278 A.2d, at 146, and as the remainder of this opinion makes clear.

Petitioner has written at length about why he believes the Tenth District's decision is a misstatement of Ohio law. But even if it were in error, that would not make its decision a "subterfuge" to avoid an issue of federal law. The Tenth District's opinion recognizes at the outset that Petitioner's First Assignment of Error pleads a federal claim: "In his first assignment of error, appellant contends that prosecutorial misconduct denied him of his right to a fair trial." *State v. Shine-Johnson*, 2018-Ohio-3347 ¶ 72 (Ohio App. 10th Dist. Aug. 21, 2018). The appellate court squarely decided that issue by overruling the First Assignment. *Id.* at ¶ 100. Along the way to that conclusion, it cites controlling Supreme Court precedent on prosecutorial misconduct. *Id.* at ¶ 82, citing *Donnelly v. DeChristoforo,* 416 U.S. 637, 647 (1974), along with numerous Ohio cases enforcing the federal standard. There is no evasion of the federal question here, much less any "subterfuge" to hide such an evasion.

## Ground Two: Failure to Give Curative Instructions

In his Second Ground for Relief, Shine-Johnson claims he was denied a fair trial because the trial court failed to give a curative instruction on the prosecutor's claim in closing argument that Shine-Johnson had essentially admitted to murder, defined as Ohio law does as a "purposeful killing."

The Court adopted the Magistrate Judge's conclusion that this claim was procedurally defaulted for lack of a contemporaneous objection as the Tenth District had held. In his 59(e)

5

Motion, Petitioner argued again that the Tenth District misunderstood Ohio law on contemporaneous objections. The Report rejected this as a basis for amending the judgment because Petitioner had not shown a manifest error of law in this Court's deference to the Tenth District's interpretation of Ohio law (Report, ECF No. 99, PageID 6737-39).

Petitioner objects by again arguing he "did not violate the Ohio contemporaneous objection rule." (Objections, ECF No. 100, PageID 7373). He then proceeds to reargue the merits of his claim that he satisfied Ohio's contemporaneous objection rule. The Court concludes the Report is not contrary to law on this issue.

### Ground Three: Failure to Give Requested Instructions

In his Third Ground for Relief, Shine-Johnson claims he was deprived of a fair trial when the trial court refused to give certain requested jury instructions on the defense of self-defense. Petitioner had argued to the Tenth District and then again at length in his Traverse and his Objections to the Magistrate Judge's Report and Recommendations on the merits that under Ohio law he was under no duty to retreat further when he was outside his home when he fired the fatal shot. The Opinion and Order found Petitioner had cited no Supreme Court of Ohio decision that supported his position.

In the instant Motion, Petitioner repeats this argument but still cites no in-point Ohio Supreme Court decision. On that basis the Report now before the Court found there was no manifest error of law in the decision (Report, ECF No. 99, PageID 6739-451). Petitioner's Objections do not show that the Report is contrary to law.

### Ground Four: Ineffective Assistance of Trial Counsel

The Tenth District decided that none of the objections Petitioner alleges his trial counsel should have made would likely have been successful. The Report recommended dismissal of this

6

claim because "It cannot be deficient performance in violation of the first prong of *Strickland [v. Washington]* to fail to make an objection that was without merit. Neither *Strickland* nor any of its progeny hold that a trial attorney performs deficiently when he or she fails to make a meritless objection." (ECF No. 85, PageID 6362). The Opinion and Order adopted this conclusion.

In his 59(e) Motion, Petitioner merely reargues the merits of his claims of prosecutorial misconduct (Motion, ECF No. 98, PageID 6701-04). The Magistrate Judge accordingly recommended denying the 59(e) Motion as to the Fourth Ground for Relief.

In his current Objections, Petitioner states he "reasserts and continues his original objections." (ECF No. 100, PageID 7394). Because the Court has already overruled those objections in the Opinion and Order and Petitioner has not shown it was a clear error of law to do so, the Report's conclusion on this issue is not contrary to law and is hereby adopted.

### Ground Five: Cumulative Trial Court Error

The Report and the Opinion and Order found this claim non-cognizable. Petitioner did not move to amend the Court's decision on this claim and has no objection with respect to it.

### Ground Six: Ineffective Assistance of Appellate Counsel

In his Sixth Ground for Relief, Shine-Johnson claims he received ineffective assistance of appellate counsel when his appellate attorney failed to raise as an assignment of error his trial counsel's failure to file a motion to dismiss because the State had destroyed exculpatory evidence. The Magistrate Judge excused an asserted procedural default, but found this claim was without merit because there was not sufficient evidence in the appellate record to support such a claim on appeal (ECF No. 85, PageID 6363-67). The Court accepted this conclusion (Opinion and Order, ECF No. 96, PageID 6636-38).

Petitioner's Rule 59(e) Motion reargues the merits of this claim and asserts "[t]he Court

7

seems to find it is ok present false and tainted evidence at trial and it does not violate due process." (Motion, ECF No. 98, PageID 6705.) Not so. The Magistrate Judge wrote in the currently pending Report:

> The basis of the Court's decision [in the Opinion and Order] on Ground Six is that there was no evidence in the record to prove any part of this *Trombetta* claim and therefore no basis for an appellate claim of ineffective assistance of trial counsel for failure to raise the claim. Appellate counsel have to work with the record bequeathed to them. They cannot responsibly make claims not supported by the record. Petitioner has shown no clear error of law in the Court's dismissal of Ground Six on that basis.

(Report, ECF No. 99, PageID 6742).

Petitioner's Objections to the 59(e) Report on Ground Six are quite lengthy (ECF No. 100, PageID 7394-7408.) In evaluating those Objections, it is important to remember that Ground Six does not seek relief directly on a claim the State deliberately destroyed exculpatory evidence, but on a claim of ineffective assistance of appellate counsel for not raising a claim of ineffective assistance of trial counsel for failure to file a motion to dismiss on that basis. Petitioner is correct that the test for prejudice under *Strickland v. Washington,* 466 U.S. 668 (1984), is not whether the claim would definitely have succeeded, but whether there is a reasonable probability it would have succeeded. To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley,* 644 F.3d 308 (6th Cir. 2011), citing *Wilson v. Parker,* 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*., *citing Wilson.* Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017), quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008).

8

The relevant question then is: Is it reasonably probable that the appeal would have resulted in a reversal if appellate counsel had claimed trial counsel was ineffective for failing to move for dismissal on the basis of intentional destruction of exculpatory evidence[1]?

> The twenty gauge shotgun with which the decedent is claimed to have threatened Petitioner did not have a firing pin at the time of trial and had been disassembled after it was taken into police custody. Petitioner's theory seems to be that the police deliberately removed the firing pin and destroyed it so as to undermine Petitioner's claim that he feared for his life with the shotgun in his father's hands.

(Merits R&R, ECF No. 85, PageID 6366). The Report noted that this claim had become substantially more accusatory over time: when he filed his 26(B) Application, Petitioner only asserted the Columbus Police were negligent in failing to preserve the shotgun in the condition in which it was taken into evidence. *Id.* The Report concluded:

> The record does not contain evidence that a *Trombetta* claim in the trial court would have been successful. There is no proof of police bad faith and indeed no proof the firing pin was in the shotgun at the time of the incident. Far more important than the presence of a firing pin would have been Petitioner's reasonable belief that the weapon was operable.

*Id.* at PageID 6367. Petitioner objected, but the Court overruled the Objections and adopted the Report on this issue, writing:

> The Court agrees that the shotgun had exculpatory value when testimony placed it in the hands of the decedent during the altercation. Indeed, the fact that his father was armed was key to Shine-Johnson's self-defense claim. But the State did not destroy that exculpatory value by disassembling the gun for analysis. It was still there, produced by the State at trial for the jury to look at.

(Opinion and Order, ECF No. 96, PageID 6637). Petitioner's Rule 59(e) Motion reargues the merits of this claim, but the pending Report recommends rejecting this claim again because

---

[1] Petitioner alternatively argues this claim as one for failure to produce exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), or intentional presentation of false evidence under *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

9

> Petitioner's Motion assumes without proving the truth of the underlying claim that the shotgun, if it had not been disassembled, would have been exculpatory and that disassembling it was intended to destroy its exculpatory value and provide false information to be presented. None of this was proved; all of it is assumed.

(Report, ECF No. 99, PageID 6742). In his Objections, Petitioner reargues the merits of this claim all over again, this time including arguments he has never before made in these habeas proceedings, such as what the job duties of various police experts should be and therefore their competence or lack of competence to testify on various subjects.

If, as the courts have repeatedly held, a Rule 59(e) motion is not the appropriate place to make an argument for the first time in a habeas proceeding, much less are objections to a report and recommendations on such a motion the appropriate first place to make such arguments. The Court remains persuaded that there was insufficient evidence to ground a probably successful *Trombetta* motion to dismiss in the trial court. As to Ground Six, the Report is adopted and Petitioner's Objections are overruled.

### Ground Seven: Mandatory Retroactive Application of a Change in the Burden of Proof on Self-Defense

In his Seventh Ground for Relief, Petitioner asserts that a change in the statutory burden of proof for self-defense, adopted by the Ohio General Assembly after his trial, must be applied retroactively to his case. In the Report on the merits, the Magistrate Judge noted that Petitioner did not rely on any indication the Ohio General Assembly intended the amendment to be retroactive, but relied directly on the Due Process Clause (Report, ECF No. 85, PageID 6367-72). The Report considered and rejected each of Petitioner's due process arguments. *Id.* The Opinion and Order adopted the Report's conclusion on Ground Seven (ECF No. 96, PageID 6638-39).

Petitioner's Rule 59(e) Motion again reargues the merits. For example, Petitioner again attacks the Court's reliance on *Martin v. Ohio,* 480 U.S. 228 (1987), where the Supreme Court

10

expressly upheld the constitutionality of Ohio's allocation of the burden of proof on self-defense in the statute that was in effect when Petitioner was tried:

> The Court tries to rely on old law under *Martin*. Where the major purpose of **new constitutional doctrine** is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect.

(ECF No. 98, PageID 6717; emphasis added). In rejecting this argument, the Magistrate Judge noted that the new statute is not "new constitutional doctrine" from the Supreme Court and that the Supreme Court has now ruled that new constitutional procedural doctrine will not be applied retroactively (Report, ECF No. 99, PageID 6746, citing *Edwards v. Vannoy*, 593 U.S. ___, 141 S. Ct. 1547 (2021).

In his Objections, Petitioner cites proof of legislative intent about the purpose of the new self-defense statute (ECF No. 100, PageID 7409). However, the cited language shows nothing at all about retroactivity. If the General Assembly had intended retroactive effect and thereby to reopen all the murder convictions which occurred under the old statute where self-defense was raised, it seems very likely it would have said so.

In his Objections, Petitioner cites a number of cases which he claims hold the new statute is "substantive." (ECF No. 100, PageID PageID 7412, citing *State v. Hanford,* 2019-Ohio-2987 (Ohio App. 9th Dist. Jul. 24, 2019); *State v. Gloff,* 2020-Ohio-3143 (Ohio App. 12th Dist. Jun. 1, 2020), *State v. Williams*, 2020-Ohio-3269 (Ohio App. 9th Dist. Jun. 10, 2020); *State v. Carney*, 2020-Ohio-2691(Ohio App.10th Dist. Apr. 20, 2020); *State v. Collins*, 2020-Ohio-3126 (Ohio App. 10th Dist. May 286, 2020, *State v. Jackson*, 2020-Ohio-1606 (Ohio App. 8th Dist. Apr. 23, 2020); and *State v. Petway*, 2020-Ohio-3848 (Ohio App. 11th Dist. July 20, 2020).

In *Hanford* the crime occurred on October 1, 2017. The new statute came into effect March

28, 2019, before the appellate decision. The Ninth District acknowledged the new statute but did not apply it retroactively, holding the amendments "are not at issue in this case."

In *Gloff* the Twelfth District held that the amendments applied prospectively to trials commencing on or after the effective date of March 28, 2019.

In *Williams* the crime occurred in November 2018. At trial Williams requested an instruction under the new statute and the State did not oppose the request. Although the trial date is not given, it is unlikely a murder case of this complexity would have been tried within four months of the crime, so it is probable the trial occurred after March 28, 2019. In any event, application of the new statute was uncontested and the court had no occasion to discuss retroactivity.

In *Carney* the crime happened May 1, 2017. Trial did not occur until "late April and early May, 2019." The Tenth District recognized that the new statute became effective before trial and thus was applied to the case.

In *Collins* the murder occurred May 26, 2018, but the trial was not held until May 2019, after the effective date of the new statute. The Tenth District held no self-defense instruction was merited, based on the evidence, but assumed the applicability of the new statute in that the trial was after the amendment's effective date.

In *Jackson* the crime occurred August 11, 2018, but the trial did not happen until April 2019 and the court held the new statute applied.

*Petway* was a misdemeanor assault case where the crime occurred June 9, 2019, and the Eleventh District applied the new statute.

Thus in each case cited by Petitioner as supporting retroactivity, although the crime occurred before the effective date of the statute (except *Petway*), the trial occurred after (or in the

*Gloff* case on) the date of effectiveness. None of these cases even suggests that the statute would apply retroactively to a trial that had been completed before the effective date. Because the amendments regulate what occurs at trial, this application makes common sense.

Courts can adjust their process to accommodate new procedures required by the General Assembly going forward. The only way to apply the new statute to cases that had already been tried would be to vacate the judgment and retry the case. Given the number of people serving long sentences for murder who claimed to have been acting in self-defense, this would involve a large number of new trials. There is no evidence that is what the General Assembly intended and it is not commanded by the Due Process Clause.

## CONCLUSION

Having considered de novo each portion of the Report to which Petitioner has made objection, the Court overrules the Objections in their entirety and adopts the Report. Petitioner's Motion to Amend the Judgment under Fed.R.Civ.P. 59(e)(ECF No. 98) is DENIED. The Court has already denied a certificate of appealability and certified to the circuit court that any appeal would be objectively frivolous (ECF No. 96, PageID 6639). Because reasonable jurists would not disagree with the Court's conclusion on Petitioner's Rule 59(e) Motion, he is also denied certificate of appealability on that Motion and the Court extends to the Rule 59(e) Motion its certificate to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

**IT IS SO ORDERED.**

_____
ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

**DATED: November 17, 2021**